## THE EXETER BANK *versus* G. SULLIVAN and another.

Where a debtor, to whom application for payment was made, said it was impossible for him to pay, but offered to mortgage certain real estate to pay the debt, and to pay the interest every ninety days, which offer the creditor did not accept—this was held not to take the case out of the statute of limitations.

A payment made by one of two sureties upon a promissory note, does not take a case out of the statute of limitations as to the other.

ASSUMPSIT. One count was upon a note, for $3200, dated March 7, 1808, and payable to the bank in sixty days, with interest after. Another count was upon

a note, for $1078,60, payable to the bank, in sixty days, <span>Exeter Bank<br>v.<br>Sullivan et a.</span>
with interest after, and dated, December 28, 1812.
The action was commenced on the 22d November, 1830,
against G. Sullivan and Oliver Peabody, who jointly
pleaded the general issue and the statute of limitations.
But O. Peabody died before the trial.

At the trial here, August term, 1832, the plaintiffs pro-
duced a note, of which the following is a copy.

$3200.                              March 7, 1808.

Value received, I, Gideon Lamson principal, Oliver
Peabody and George Sullivan sureties, jointly and sev-
erally promise to the president directors and company of
the Exeter Bank, three thousand two hundred dollars,
in sixty days, with interest after.

GIDEON LAMSON.

O. PEABODY.

G. SULLIVAN.

They also produced another note, of which the follow-
ing is a copy.

$1078,60.          Exeter, December, 28, 1812.

For value received, we, jointly and severally, promise
to pay the president directors and company of the Exe-
ter Bank, one thousand seventy-eight dollars and sixty
cents, in sixty days, with interest after.

GIDEON LAMSON, prin.

G. SULLIVAN.

O. PEABODY, surety.

It was not disputed that Lamson was the principal up-
on both the notes, and Sullivan and Peabody sureties ; or
that this was known to the bank, when the notes were
discounted.   Lamson died in the year 1828.

It appeared, on the face of the note for $3200, that it
was originally written "January 4, 1808," and that it
had been altered in the hand writing of said Lamson,
who wrote the rest of the note, so as to bear date March
7, 1808.

On the part of the defendant it was objected that this

note ought not to be received in evidence until the bank should explain the reason of the alteration, and show that it was made before the note was signed by the defendant. But the court, being of opinion, that, under the circumstances, it was to be presumed that the alteration was made before the note was signed, and that the burthen of showing that it was made afterwards was upon the defendant, admitted the note in evidence without any explanation on the part of the bank.

Interest on both notes was paid by Lamson, for several years previous to the year 1822, and the payments duly endorsed on the notes.

Peabody made several payments of interest on the largest note, the last of which was made, and endorsed, on the 31st December, 1827.

Peabody also made a payment of more than five hundred dollars on the other note, which was received, and endorsed, on the 2d September, 1825.

Sullivan and Lamson were directors when the bank went into operation, and Sullivan continued a director until 1812, and Lamson until 1816.

Lamson was in good circumstances when these notes were made, and so continued until the year 1817 or 1818. In 1820 he became embarrassed.

On the 5th April, 1820, Lamson conveyed to Peabody sundry tracts of land in Exeter, in mortgage, among other things to indemnify Peabody against these two notes.

On the 3d December, 1822, Lamson conveyed the same lands to Sullivan, in mortgage, to indemnify him against these notes. Sullivan and Peabody afterwards released to Lamson, certain tracts, included in their mortgages, and he conveyed the same tracts to other persons.

The bank still holds notes upon which is the name of the defendant, as principal, and of the said Lamson as surety, and which remain unpaid, and were given about the time of these notes.

Immediately before the 14th December, 1829, the cashier of the bank called on the defendant, by order of the directors, for security of the demands due to the bank. The defendant told him that it was as much impossible for him to pay the whole of the notes as it was to create a world. The cashier then asked him to state what he could do, and to put his propositions in writing, that they might be laid before the directors.

On the 14th December, 1829, the defendant enclosed to the cashier his proposals, as follows.

" I will transfer to the bank, demands to secure the payment of my own debt. To pay Mr. Lamson's debt I will mortgage my land in Newmarket—the house and land lately owned by Mr. Lamson and my own house and land.—The interest on said Lamson's debt I will pay every ninety days. December 14, 1829."

These proposals were submitted to the directors and rejected.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court upon the foregoing case.

*E. Cutts*, and *J. Parker*, for the defendant, furnished a written argument in the vacation. They took the following positions.

I. The date of the note for $3200 has been altered, and the defendant is discharged, unless the alteration was made, with his assent ; and the burden of proof is on the plaintiffs. 1 Dallas, 67 ; Chitty on Contracts, 298 ; 1 Peter's C. C. R. 369, note. 5 Bingham, 183, *Henman* v. *Dickinson.*

II. The suit is barred by the statute of limitations. And the plaintiffs, in order to recover, must show a new express promise, or a direct, unqualified, unconditional, admission by the defendants, of a subsisting debt, which he is liable and willing to pay.

Their evidence is not competent, in law, to do this.

1. There is nothing in the communication between the defendants and the cashier, to take the case out of the statute.

They are vague and indefinite, in not referring to any particular demand. Two notes are in suit, and it does not appear to which they had reference, if to either. They do not admit any debt from himself, nor show any liability or willingness to pay, but the contrary. 2 N. H. Rep. 426, *Stanton* v. *Stanton* ; 4 N. H. Rep. 317, *Atwood* v. *Coburn* ; 5 N. H. Rep. 154, *Russel* v. *Copp* ; 1 Peter's S. C. Rep. 351—362, *Bell* v. *Morrison* ; 6 Peter's, 86, *Moore* v. *Bank of Columbia* ; 3 Wendell's Rep. 187, *Purdy* v. *Austin* ; 3 Wendell, 536, *Stafford* v. *Bryan* ; 7 Wendell, 267, *Hancock* v. *Bliss* ; 6 Bingham, 349, *Fearn* v. *Lewis* ; 1 Bing. 266, *Frost* v. *Bengough.*

They are mere proposals—an attempt to buy peace— are conditional, and were rejected. 11 Wheaton, 315, *Wetzell* v. *Bussard* ; 1 Peter's 362—371, *Bell* v. *Morrison* ; 6 Barn. and Cres. 603, *Tanner* v. *Smart* ; 4 N. H. Rep. 501, *Sanborn* v. *Nielson.*

It has even been held that, if the promise be conditional, it must be declared on as such. 7 Bing. 163, *Hayden* v. *Williams.*

Lamson was dead at the time. No admission, therefore, by the defendant, could raise a joint promise, nor be construed to raise a sole promise, without a new consideration. 1 B. & C. 247, *Pittam* v. *Foster* ; 2 B. & C. 23, *Atkins* v. *Tredgold* ; 1 B. & Adolph. 396, *Slater* v. *Lawson* ; 12 Wheaton, 565, *Thompson* v. *Peter.*

2. Nor can the payments by Lamson and Peabody take the case out of the statute. Lamson's were not within six years ; but with neither of them had the defendant any concern. 1 Peter's, 370—374, *Bell* v *Morrison* ; 1 B. & Ald. 463, *Brandrane* v. *Wharton* ; 4 Greenleaf, 140 ; 9 Pick. 42.

Under the law of the statute of limitations, as at present held and understood, it would be absurd in the extreme, to hold that any act or promise, by one co-promissor, can take a case out of the statute as to another.

A new promise, by one, must be made, in such case,

a new promise by another who had no hand in making
it.

The admission, by one, of a subsisting debt, which he is liable and willing to pay, must be made evidence that the other also is willing to pay, without any volition on his part.

And, in some cases, it must be evidence that he is willing to pay when he absolutely refuses to pay. Take the case of a note, given by principal and surety, barred by the statute. The surety, on being applied to for payment, claims his discharge, and declares he will not pay. The principal, upon a demand made of him, says he will. This must be held evidence that the surety is willing to pay, notwithstanding his express refusal.

Again—One of two joint promissors, on a note which is barred, promises to pay when he is able. This is clearly conditional as to him, and the happening of the contingency, as to him, must be shown, before any suit can be maintained against him. The other joint promissor is well able at the time. If this is *his* promise also, it is a promise to pay when *he* is able. His ability is undoubted, and a suit may be sustained against him immediately.

Here, then, would be a joint contract, on the same original promise, and on the same renewed promise,—absolute as to one, but conditional as to the other, and upon which a suit lies against one, but not against the other.

In such case, also, the conditional promise of the first may make him liable, absolutely, for his proportion of the debt, forthwith; as the one who was able, and had paid, must have an immediate action against the first for contribution, upon the implied assumpsit raised by the payment, for there could be no pretence of any condition annexed to that.

These absurdities would be the necessary result of permitting the admissions, or promise of one joint debtor, to take away the bar of the statute as to the other—

Exeter Bank
v.
Sullivan et a. for the conditional promise of the first, could, in no way, be construed as the promise of both to pay when the first was able, there being no principle of law which gives him authority to put off the liability of his co-promissor, until a future contingency, when the co-promissor himself may not be able. Such a construction would be equally absurd as the other.

3. Nor can the mortgage to indemnify have any effect in this case. It is not within six years—and if it was it locks up no property, and shows no willingness to pay, but the reverse. 4 Pick. 59, *D'Wolf* v. *Chapin.*

It is conceded that some of the older authorities, upon the statute of limitations, are contrary to the positions now taken—and there are a few of more modern date, in governments where decisions were made and reported under the former construction of the statute, which may be cited for the plaintiffs. It is amusing to witness the attempts of some tribunals to give the statute its true operation without directly overruling former decisions ; and the incongruity of the principles thus produced.

But it is believed that it cannot here be held, consistently with the decisions already made, that this case is taken out of the statute.

*Tilton* and *I. Bartlett,* for the plaintiffs.

A surety, in general, stands on the same ground as the principal. There may be cases, which may be deemed hard cases for the surety. But the surety is commonly the effective and responsible man. He is the person to whom the creditor principally looks, and he is taken because the credit of the principal is doubted. 3 Binney, 523 ; 2 D. & E. 105.

We rely upon the payments made by Peabody, to take the case out of the statute of limitations.

The case of *Bell* v. *Morrison*, in the supreme court of the United States, only settles what is the law on this subject in the state of Kentucky.

It has been repeatedly decided, that a partial payment, by one maker of a note, takes a case out of the statute, with respect to another.   3 Pick. 291, *White* v. *Hale*; 2 ditto, 581, *Hunt* v. *Bridgham*; 4 ditto, 382, *Frye* v. *Barker*; 1 Starkie's N. P. C. 488, *Holme* v. *Greene*; 1 Barnwell & Adolphus, 396, *Slater* v. *Lawson*; 8 B. & C. 36, *Burleigh* v. *Stott*.

The admissions and offers, made by the defendant, take the case out of the statute.   4 Carr. & Payne, 463, *Lang* v. *McKenzie*; 3 ditto, 296, *Roberts* v *Roberts*; 3 ditto, 83; 3 B. & Alds.141; 1 Carr. & Payne, 631, *Triggs* v. *Newnham*; 3 Bingham, 119, *Colledge* v. *Horn*.

RICHARDSON, C. J. delivered the opinion of the court.*

This corporation has shown great indulgence to the makers of these notes;—an indulgence, which can hardly be reconciled with any true banking principles; which could scarcely be deemed safe in any case and under any circumstances, either to the bank or the surety, and which is not unlikely to have been injurious even to the principal himself.   For too much indulgence to its debtors, on the part of a bank, is, not unfrequently, like too much indulgence by a parent to a child, pregnant with mischief to them to whom it is accorded.   And in a case like this, where, after the lapse of twenty years—long after the principal became embarrassed in his circumstances,—and after his death, a surety is called upon to pay, he seems to us to have a right to demand of a court of justice the full benefit of any legal principle, of which he is entitled to avail himself as a defence.

It is now twenty-five years since the notes, on which this action is founded, were given; and the statute of limitations is clearly a bar to the suit, unless the circumstances, on which the plaintiffs rely for the purpose, are, in law, sufficient to take the case out of the operation of the statute.   It is said, on behalf of the plaintiffs, that the admissions and proposals made by the defendant, in

---

*PARKER, Justice, having been of counsel, did not sit in the cause.

the year 1829, are sufficient to take the case out of the statute, and we shall proceed, in the first place, to examine the effect of those proposals and admissions.

It is not to be doubted, that what the defendant then said amounted to an admission, that the debt was then due, nor that it would have been competent for a jury to infer a promise to pay, from that admission, if there had been nothing, in the circumstances attending the admission, to rebut such an inference. But the admission of a debt does not take a case out of the statute. It is only evidence from which a jury may infer a promise that will take a case out of the statute. 2 N. H. Rep. 425, *Stanton* v. *Stanton.*

It is well settled, that no promise is to be raised by implication, in these cases, against the express declarations of the party, at the time, nor beyond what he offers. However distinctly he may admit the debt to be justly due, yet if he declares at the time, that he never will pay, the admission and declaration taken together afford no evidence of a promise to pay. So when he admits the debt to be due and offers to pay a part, the admission, and offer, taken together, are not evidence of a promise to pay any thing more than what is offered. 4 N. H. Rep. 315, *Atwood* v. *Coburn* ; 6 Bingham, 349, *Fearn* v. *Lewis* ; 2 Moore & Payne, 581, *Gould* v. *Shirley* ; 4 Greenleaf, 41 and 413 ; 3 ditto, 97.

We entertain no doubt, that, in settling the question, whether the declarations and offers of the defendant take the case out of the statute, they must be taken altogether. For it would be contrary to reason and sound sense to seize upon a detached part of what was said, and infer, from that, a promise to pay, when the declarations and offers, taken altogether, afforded no ground for such an inference.

In this case, the defendant, at the time he made the offers and proposals on which the plaintiffs rely, began by declaring his total inability to pay the debt. He then

made certain proposals, which were rejected. Now it
seems to us, to be absurd to hold that, after a party has declared his total inability to pay, a promise to pay, may be inferred from offers which the other party has wholly rejected. And in the case of *Smith* v. *March*, decided in this court, at January term, 1831, in this county, where the defendant had admitted the debt, and expressed a strong desire to pay, and offered to pay a part, but said, at the same time, he was wholly unable to pay all the debt, it was held that the admission and offer were not evidence that could be submitted to a jury to prove a promise that would take the case out of the statute. That case was settled after a full consideration of the question and nothing has since occurred to us, that has led us to doubt that the decision in that case was correct. And if it be law, it settles the question we are now considering.

It has been further argued, that the case is taken out of the statute by the payments which Peabody, a co-surety with the defendant, made, within six years before the commencement of this action.

It is not known, that the question, which arises on this point in the case, has ever been settled in this state. It is therefore to be decided, rather upon sound legal principles, than by authorities.

We are satisfied, that the statute of limitations was intended to be a statute of repose. It is a wise and a beneficial law, having a tendency to produce adjustments of affairs between parties, while they remain fresh in their recollection and before time, in its lapse, has thrown darkness and obscurity upon them. It is neither unjust nor discreditable to take advantage of the statute—especially in the case of a surety.

In no form of action, except assumpsit, can a case be taken out of the statute by any acknowledgement, or payment, in part, of the debt. 4 N. H. Rep. 336 ; 3 Bingham, 638.

And it has been very justly questioned, whether assumpsit ought to have been made an exception.   3 Bingham, 329.

It is, however, well settled, that an acknowledgement of a subsisting debt, which the party is liable and willing to pay, does, in general, amount to evidence of a promise which may take an action of assumpsit out of the statute.   And a payment in part is, in general, considered as amounting to such an acknowledgement.

Whether such an acknowledgment, by one defendant is enough to take a case out of the statute with respect to another, is a very different question, and has been differently decided by different courts.

Some have held the opinion, that an acknowledgement of the debt, by one, may take a case out of the statute, with respect to another.   Douglas, 652, *Whitcomb* v. *Whiting* ; 2 Starkie's Ev. 896 ; 3 Pick. 291, *White* v. *Hale* ; 6 Johns. 267, *Smith* v. *Ludlow* ; 2 H. Bl. 340, *Jackson* v. *Fairbanks* ; 1 Taunt. 104 ; 15 Johns. 3 ; 2 Pick. 581 ; 2 Bing. 306 ; 2 Saunders, 63, note 6.

But this principle, which was first laid down by Lord Mansfield, has since been questioned in England ; the foundation on which it rests, has been examined in the supreme court of the United States, and been found to be altogether unsatisfactory ; and it has been exploded in Kentucky and Pennsylvania.   1 Peter's S. C. R. 363 ; 1 B. & Alds. 467.

Those who hold, that an acknowledgement or a partial payment of the debt, by one, may take a case out of the statute as to all the joint debtors, found their opinion on the ground, that the bar, created by the statute, rests entirely upon the presumption, that the debt has been paid and that such an acknowledgement or payment removes the presumption and revives the original promise.   And they conclude, and, if this be a correct view of the subject, very justly conclude, that in this, as in other cases, an acknowledgement by one of many, who

are jointly concerned is evidence against all, sufficient to remove the presumption of payment. This is the explanation given by Best, C. J. in *Perham* v. *Raynal,* 2 Bingham, 306. And this is the explanation given by Lord Mansfield, Douglas, 652. He says " an acknowledgement by one, is an admission by all, and the law raises the promise to pay, when the debt is admitted to be due."

It is not known, that any other explanation has ever been attempted. 8 Mass. Rep. 134.

But, if this be the true construction of the statute of limitations, it is clear that many cases, which have been overruled as not law, in latter times, are founded on true principles. For, if an admission of the debt takes a case out of the statute, it ought to do so, even if he, who makes the admission, declares at the time, that he will never pay. It is wholly immaterial what his intentions may be. He admits the debt, and this removes the presumption of payment.

Those, who hold the opinion, that an acknowledgement of the debt, by one, does not take a case out of the statute as to another joint promisor, rest their opinion on the ground, that an acknowledgement of the debt does not, in any case, take a cause out of the statute, and, that it is only evidence of a promise which may revive the debt, but not the original promise.

The principle, that an acknowledgement of the debt is only evidence of a new promise, has often been recognized by this court. 2 N. H. Rep. 425 ; 5 ditto, 154,—has been adopted by the supreme court of the United States, 1 Peter's S. C. R. 351—by the supreme court of Massachusetts, 8 Pick, 206—by the supreme court of New-York, 15 Johns. 511—and by the supreme court of Pennsylvania, 5 Binney, 573.

It seems to be now becoming the general opinion, that an acknowledgement of the debt, that will warrant the finding of a new promise, must be an unqualified and direct admission of a present existing debt, which the par-

ty is liable and willing to pay. If the debt be admitted, but the debtor at the same time refuses to pay, no promise can be raised by implication. The acknowledgement or new promise is not deemed to be a continuance of the original promise, but a new contract, supported by the original consideration, or evidence of such a contract.

This view of the operation of an acknowledgement of the debt, is believed to be conformable to the general current of the English, as well as of the American, decisions, and has been explained and enforced, by Mr. Justice Story, in a most able and satisfactory manner. 1 Peter's S. C. Rep. 351.

If then, the admission of a debt does not, of itself, take the case out of the statute, but is only evidence of a promise which may have that effect, the principle, that an acknowledgement by one joint debtor will take a case out of the statute as to another, falls to the ground. There is nothing left to support it. For, although one joint debtor may admit the fact of the existence of the debt, which admission will be evidence of that fact against another joint debtor, still it by no means follows, that, by such admission, he can raise a new promise, that will bind another joint debtor. It is not pretended that one can make a new contract, in such a case, that will bind the other.

The admission may prove against all, that there is a just debt, that has not been paid. But it can go no further. This is not enough. Before a new promise can arise, it must appear, not only that there is a subsisting debt, but that there is such a debt, which the party, to be charged, is willing to pay. The admission of a debt by one, does not furnish any ground to presume that another is willing to pay. If an acknowledgement of the existence of the debt by one, can furnish a ground to presume a promise by another, in his absence, it may do it in cases where the other, if present, would refuse to pay. Indeed it may do it in a case where the other has

actually paid the debt. In the case of *Cambridge* v. *Hobart*, 10, Pick. 232, a distinction is made between an admission made by a sole debtor and one made by one of several debtors. And where one of two makers of a note, many years after the note was given, said he presumed that it was not paid, it was held that this was not enough to take the case out of the statute as to himself, because, under the circumstances, it had very little tendency to rebut the presumption of payment arising from lapse of time. This distinction seems, to us, to show that the old rule can rarely be safely applied in any case.

When there is only one debtor, he must know whether the debt is paid or not. But where there are several debtors, there may be payment by one without the knowledge of the rest.

If one joint debtor admits that he owes the debt, and says nothing to the contrary, it may be inferred, from his silence, that he is willing to pay. But his silence can furnish no ground to presume that another, who is absent, is willing to pay.

If one debtor promises to pay when able, does this take the case out of the statute as to another who is able to pay? It is as clear an admission of the debt, as can be made. But if it take a case out of the statute as to the other, it may do it, in cases where he who makes the admission does not take the case out of the statute with respect to himself.

We are, on the whole, of opinion that a payment, by one joint debtor, does not take a case out of the statute as to another; that the rule which has given that effect to such a payment, cannot be sustained upon principle; nor can it be reconciled with the decisions which have been made, in this state, in relation to the statute of limitations. The verdict, in this case, must, therefore, be set aside.