## COOK *against* BRADLEY :

### IN ERROR.

A mere written contract is upon the footing of a parol contract, and requires a consideration to support it.

A subsisting legal obligation to do a thing, is a sufficient consideration for a promise to do that thing.

A son of sufficient ability is under no legal obligation to pay for past expenditures, made for the relief of an indigent parent.

A moral obligation is available as a consideration for an express promise, in those cases, and in those only, where a prior legal obligation has existed, which, by reason of some statute, or stubborn rule of law, cannot now be enforced.

Therefore, where *A.* had furnished necessaries to *B.*, who was indigent, and in need of relief, and *C.*, the son of *B.*, who was of sufficient ability, signed and delivered to *A.* a writing in these words : " This may certify, that the debt now due from my father *B.* to *A.*, I acknowledge to be for necessaries *of* life, and *of* such a nature, that I consider myself hereby obligated to pay *A.* 60 dollars towards said debt now due, provided my father does not settle with *A.* in his life-time ;" it was held, that this contract was void, for want of consideration, and consequently, that no action could be supported on it.

THIS was a bill in chancery, brought by *Bradley* against *Hannah Cook*, administratrix of *Henry Cook*, deceased, praying for the correction of a miatake in a discharge given by *Bradley* to *Henry Cook*, or for an injunction against the use of that discharge in an action at law, pending in the superior court.

The bill stated the following case. On the 18th of *February*, 1808, *Jonathan Cook* was indebted to *Bradley*, in the sum of 60 dollars, for goods necessary for his sustenance, before that time furnished, by *Bradley*, to him, at his request, he being then poor, and needing relief, and unable to provide for himself. *Henry Cook*, the only child of *Jonathan*, was possessed of a large estate, and was of sufficient ability to support his father. On the day above mentioned, he signed and delivered to *Bradley* a writing in these words: " This may certify, that the debt now due from my father, *Jonathan Cook*, to *Joel Bradley*, I acknowledge to be for necessaries of life, and of such a nature that I consider myself hereby obligated to pay said *Bradley* sixty dollars towards said debt now due, provided my father does not settle with said *Bradley* in his life-time; and it is agreed by said *Bradley*, that he will take any kind of produce or stock that is not old, at their value, or as they are going in the neighbouring towns. Witness my hand, this 18th day of *February*, 1808.          *Henry Cook.*"

*Jonathan Cook* died on the 1st of *September*, 1821, without having paid or settled for any part of said debt ; and about two years afterwards, *Henry Cook* died. The debt remaining still unpaid, in *September*, 1824, *Bradley* brought an action of *assumpsit* on the writing given by *Henry Cook*, against *Hannah Cook*, his administratrix ; who pleaded in bar the following discharge : " Received, *Litchfield, January* 5th, 1820, of *Henry Cook*, ten dollars in full of all claims and demands to this date.          *Joel Bradley.*"

This discharge had been given under these circumstances. *Bradley* had previously brought an action of book debt against *Henry Cook ;* but said debt of 60 dollars formed no part of the claim in controversy. This suit was settled by the parties, each agreeing to give the other a discharge from all claims and demands in such suit ; but from inadvertence, and contrary to the intention of the parties, the discharges were drawn so as to extend to all claims and demands whatever, and were so executed. Within ten minutes after the discharges were delivered, *Bradley* discovered the mistake, and requested of *Cook* that he would suffer it to be corrected : which he refused to do.

On a demurrer to this bill, the superior court adjudged the *Litchfield,* bill sufficient, and passed the decree sought. On motion of June, 1828. the defendant, the record was transmitted to this Court for revision.

Cook
*v.*
Bradley.

*S. Church* and *T. Smith*, for the plaintiff in error, contended, 1. That it appears from the bill, that the contract upon which the plaintiff's action at law is founded, is invalid, for want of consideration ; and therefore, the relief sought, if granted, would be unavailable. The necessaries were furnished to *Jonathan Cook*, upon *his* credit, and at *his* request, and without expectation of recourse to *Henry Cook.* The consideration is, therefore, not only liable to the objection of being past and executed, but *Henry Cook* was an entire *stranger* to it. *Bulkley* & al. v. *Landon* & al. 2 *Conn. Rep.* 404. 410. 416.

It will be said in reply, that *Henry Cook* was under a moral obligation to pay the debt in question ; and that this was a sufficient consideration to support the contract. But it is not universally true, that a mere moral obligation will constitute a consideration sufficient to support a promise. From an examination of all the cases, it will appear, that a moral obligation will furnish a legal consideration for a contract, in two classes of cases only : 1st, where there has been an antecedent legal liability, which cannot now be enforced—*e. g.* a debt discharged by a certificate of bankruptcy, or barred by the statute of limitations ; 2ndly, where an act has been done at the request, or for the benefit, of the person making the promise, but under such circumstances as to create no legal liability—*e. g.* infancy, coverture with a separate maintenance, usury after the taint has been removed. 3 *Bos. & Pull.* 249. n. *Smith* v. *Ware,* 13 *Johns. Rep.* 257. *Mills* v. *Wyman,* 3 *Pick.* 207. *Edwards* & ux. v. *Davis,* 16 *Johns. Rep.* 281. 283. n. *Yelv. Rep.* 41 b. (*Metcalf's ed.*) *Frear* v. *Hardenbergh,* 5 *Johns. Rep.* 272. *Early* v. *Mahon,* 19 *Johns. Rep.* 147. *Barnes* & al. v. *Headly,* 2 *Taun.* 184. This case falls within neither of the classes specified. *Henry Cook* was never liable to pay for the goods ; nor were they furnished at his request, or for his benefit. Even a legal obligation in one right, is no foundation of a promise to pay in another. *Rann* v. *Hughes* & al. 7 *Term Rep.* 350. n.

2. That the instrument pleaded in bar may be avoided at law, as well as in chancery, by shewing the mistake. 3 *Stark.*

Litchfield, Evid. 1272. & n.   Consequently, the plaintiff has adequate
June, 1828.  remedy at law.

Cook
v.
Bradley.

J. W. Huntington and D. C. Sanford, for the defendant in
error, contended, 1. That the consideration stated in the bill,
was sufficient.   The parent was poor, and needed the relief
furnished ; the son was of sufficient ability to support him ; and
the plaintiff relieved the parent's necessities.   Under these cir-
cumstances, the son, in the first place, was under a moral obli-
gation to pay for the supplies furnished.   1 Bla. Comm. 453.
3 Conn. Rep. 511.   And this was a sufficient consideration for
his promise.   It was declared to be, by Lord Mansfield, in
Atkins & ux. v. Hill, Cowp. 288, 9. by the same and Buller,
J. in Hawkes & ux. v. Saunders, Cowp. 290, 1. by Lord
Mansfield again, in Trueman v. Fenton, Cowp. 544. 548. by
Lord Ellenborough, in Atkins & al. v. Banwell, 2 East, 505.
and by the whole court of common pleas, in Lee v. Mugge-
ridge & al. 5 Taun. 36.   The same doctrine has been ad-
vanced as undoubted law, by every English elementary wri-
ter, since the determination of Atkins & ux. v. Hill.   See 2
Bla. Com. 445, and Christian's note (3).   Bull. N. P. 129.
147.   1 Esp. Dig. 95.   1 Selw. N. P. 1.   Com. on Contr. 24.
3 Wooddes. Lect. 143.   1 Fonb. Eq. 336.   2 Evans' Poth. 20.
And in an anonymous case, in 2 Show. 184. and in Scott v.
Nelson, cited Esp. Dig. 95. it was expressly decided.   This
doctrine was never questioned in England, until Bosanquet and
Puller published their note to Wennall v. Adney, 3 Bos. & Pull.
249, more than thirty years after the determination of Atkins
and ux. v. Hill ; and it was expressly repudiated in the case of
Lee v. Muggeridge & al.   In Massachusetts, the same gene-
ral principle, in the words of Lord Mansfield, was advanced by
Parsons, Ch. J. in The Andover and Medford Turnpike Cor-
poration v. Gould, 6 Mass. Rep. 43. ; by the whole court, in
Salem v. Andover, 3 Mass. Rep. 438. ; by Wilde, J., in Dav-
enport v. Mason, 15 Mass. Rep 94. ; and was never questioned
until the determination of Mills v. Wyman, 3 Pick. 207.   In
the state of New-York, the same language has been uniformly
held, by their ablest judges.   Stewart v. Eden, 2 Caines 152.
per Kent, Ch. J.   Tioga v. Seneca, 13 Johns. Rep. 382. per
Spencer, J.   Doty v. Wilson, 14 Johns. Rep. 381.   Bentley
v. Morse, 14 Johns. Rep. 468. per Curiam.   In our own
state, it has ever been considered as established law.   1

*Swift's Dig*. 204, 5. But if it were otherwise, it is so conso- *Litchfield*, nant to natural justice, that it ought now to receive the June, 1828. sanction of this court.

Secondly, the defendant was under a *legal* obligation to provide for the support of his father. *Stat.* 369. The consideration stated, therefore, comes within the principle of the note in 3 *Bos. & Pull.* 249. It makes no difference, that the *remedy* prescribed by the statute, for enforcing this duty, is a peculiar one. It is enough that by law the duty exists. In what form, or by what proceeding, the duty is to be enforced, is a matter foreign to this question. The necessaries furnished, by the plaintiff, to the suffering father, relieved the affluent son, and thus the latter *received a benefit.*

2. That the plaintiff had not adequate remedy at law. First, the instrument pleaded, though not in form a technical *release*, is one in legal effect, and will be so regarded, by our courts. Instruments of this kind have, in *Connecticut*, always been treated as releases. *Carter* v. *Bellamy, Kirby*, 291. *Tryon* & al. v. *Hart*, 2 *Conn. Rep.* 120. 1 *Swift's Dig* 300. They must be pleaded as releases under our statute ; and in practice always are. *Brace* v. *Catlin*, 1 *Day*, 275.

Secondly, this instrument is *conclusive*, and cannot be explained at law. *Carter* v. *Bellamy, Kirby* 291. *Pierson* & al. v. *Hooker*, 3 *Johns. Rep.* 68, 70. A *seal* to instruments of this kind, has never, in *Connecticut*, been deemed material. 1 *Swift's Dig*. 300. *Bacon* v. *Norton*, 5 *Day* 128. *Tryon* & al. v. *Hart*, 2 *Conn. Rep.* 120. It is an established rule, that you cannot shew a mistake in a written instrument, in a court of law. The invariable practice has been to go into chancery, in such cases ; and no evil has resulted from this practice. No good can result from a change.

DAGGETT, J. The question presented on this record for discussion, arises on the validity of the promise of the deceased, *Henry Cook*, stated in the bill. If no action can be supported on that contract, then the interference of the court to exercise its chancery power, to explain or invalidate the discharge, would be useless ; and the examination of other points suggested in argument, unnecessary I am satisfied, on a full view of the case, that the contract is void, for want of consideration ; and therefore, that no action can be supported on it.

1. The contract is not a specialty, though in writing ; nor

is it governed by the law merchant applicable to negotiable paper. Were it of the the first description, by the rules of the common law, the consideration would be locked up, and could not be enquired into. Were it a note or bill of exchange, the law merchant would give to it the same force in relation to third persons. It is true, that in *Pillans & Rose* v. *Van Mierop & Hopkins,* 3 *Burr.* 1663. a suggestion was made by *Wilmot,* and the judges who sat with him in the King's Bench, that mere want of consideration could not be alleged in avoidance of a contract *in writing.* This suggestion was never established as law : and in the case of *Rann* v. *Hughes,* 7 *Term Rep.* 350. *n.* the true doctrine of the common law was laid down. A mere written contract is upon the footing of a parol contract, and a consideration must be proved. This is an inflexible rule of law ; and the court is not at liberty, if it had the disposition, to subvert it. *Ex nudo pacto non oritur actio.*

2. What is a consideration sufficient to uphold a contract ? Here too, the common law furnishes the answer ; a benefit to the party promising, or a loss to the party to whom the promise is made. The quantum of benefit, on the one hand, or of loss on the other, is immaterial. *Powell* on *Contracts,* 343, 344. To multiply authorities on this point, is quite unnecessary.

Let us now apply these uncontroverted principles to the case before us. Could *Henry Cook* possibly receive any benefit from this contract ? He gained nothing—nothing was renounced hereby. Was he induced, by any loss to the promisee ? He advanced nothing ;—he became liable for nothing ;—he did not forego any thing, by or on the ground of it. He had before, *not at the request of Henry Cook,* but of *Jonathan Cook,* furnished the latter with necessaries for his support. It is impossible to discover, thus far, any consideration known to the law.

3. The defendant in error still insists, that the father being poor and unable to support himself, and the son being possessed of large property, a legal obligation rested on him to pay for these necessaries thus furnished ; and a legal obligation is a good consideration for a promise. The conclusion is just, if the premises are true. But was there this legal obligation ? If it exist, it is to be found in our statute providing for the support of paupers. *Stat.* 369. *tit.* 73. *c.* 1. Provision is there made, that poor and impotent persons, unable to support themselves.

shall be supported by their children, if of sufficient ability. *Litchfield,*
The manner in which they shall be compelled to furnish this June, 1828.
support, is prescribed. The select-men of the town, where Cook
the poor persons reside, or one or more of their relations, may *v.*
make application to the county court, and the court may order Bradley.
such support to be supplied, by the relations of the poor persons, from the time of such application. The facts are to be
ascertained by the court. The provision is *prospective* only.
It regards no supplies already furnished, or expenses already
incurred ; and the liability, the legal obligation, is precisely as
extensive as the law establishes it, and no greater. By this
statute, then, for these reasons, the legal obligation alleged in
support of this contract, does not appear.

That such is the construction of this statute, I cite the opinion of the supreme court of *Massachusetts,* in *Mills* v. *Wyman,*
3 *Pick. Rep.* 207. 212. as to a similar statute of that state ; and
especially, I rely on the decision of this court, in *Wethersfield*
v. *Montague* & al. 3 *Conn. Rep.* 507. One of the points settled in that case, was, that " no assessment could be made, by
virtue of this statute, for *past expenditures,* the provisions of the
statute being exclusively prospective." The principle then is,
that there is no *legal* obligation to pay past expenditures ;
which exonerates the son in this case from all legal liability for
the expenditures for the father.

4. This opens to us the only remaining point. The counsel
for the defendant in error urge, that the son was under a *moral*
obligation to support the father ;—that this is a *sufficient consideration* to uphold the promise ; and that, therefore, the son
is liable.

It cannot be successfully contended, that in every case where
a person is under a moral obligation to do an act, as, to relieve
one in distress, by personal exertions, or the expenditure of
money, a promise to that effect would be binding in a court
of law. Such an idea is unsupported, by principle or precedent. It is a just rule of morality, that a man should do
towards others what he might reasonably expect from others,
in like circumstances. This rule is sanctioned by the highest
authority, and is very comprehensive. An affectionate father,
brother or sister has taken by the hand the youngest son of the
family, given him an education, and placed him in a stuation to
become, and he has become, affluent. The father, brother or
sister, by the visitation of Providence, has become poor, and

*Litchfield,*
*June, 1828.*

Cook
*v.*
Bradley.

impotent, and houseless. The son, rolling in riches, in the over-flowings of his gratitude, for kindness experienced, contracts *in* writing to discharge some portion of the debt of gratitude, by giving to his destitute relative some one of his numerous houses for a shelter, and a thousand of his many thousand dollars for his subsistence ;—can such a promise be enforced in any judicial tribunal ? Municipal laws will not decide, what honour or gratitude ought to induce the son to do, in such a case, as Dr. *Blackstone* remarks, (2 *Bla. Com.* 445.) but it must be left to the forum of conscience.

It cannot be denied, that many distinguished judges have laid down the principle, that moral obligation is alone a sufficient consideration to support a contract. Thus did Lord *Mansfield*, in *Cowper* 288. 544. He was followed by Mr. Justice *Buller*, by Lord *Ellenborough* and other judges, in other cases. But it is an obvious remark, that the cases cited in illustration of those positions, were all cases where a prior legal obligation had existed, but by reason of some statute, or stubborn rule of law, it could not be enforced : as a promise to pay a debt barred by bankruptcy, or the statute of limitations, or a promise by an adult to pay a debt contracted during minority. In all these instances, a good consideration existed ; for each had received a benefit.

All the cases on this subject are carefully, and with just discrimination, revised, in a note in 3 *Bos. & Pull.* 249. and the true distinctions taken. The law of this note has been recently adopted in the supreme court of *New-York*, in the cases of *Smith* v. *Ware*, 13 *Johns. Rep.* 257. 289. and *Edwards* & ux. v. *Davis*, 16 *Johns. Rep.* 281. 283. n., and in a still later case (in the year 1826) in *Massachusetts, viz. Mills* v. *Wyman,* 3 *Pick. Rep.* 207.—a case referred to above for another purpose. No stronger case of *moral* obligation can be found. " A son who was of full age, and had ceased to be a member of his father's family, was suddenly taken sick among strangers, and being poor and in distress, was relieved by the plaintiff, and afterwards the father wrote to the plaintiff, promising to pay him the expenses incurred ; it was held, that such promise would not sustain an action." I am well satisfied with the very able and sound reasoning of the court, delivered by Chief Justice *Parker*, on that occasion.

I will now advert to the particular decisions of the *English* courts, cited at the bar and relied on. *Watson* v. *Turner.*

*Bull. Nisi Prius,* 147. It is no longer doubted, that the defendants in that case, the overseers of the poor, were under a legal obligation to furnish the support for which the promise was made. It is a case, therefore, within the rule in 3 *Bos. & Pull.* 249. n. The case of *Scott* v. *Nelson,* cited *Esp. Dig.* 95. and an anonymous case in 2 *Shower* 184. *seem* to imply, that a father was holden liable on a promise to pay for supplies for his bastard child ; but in my opinion, it may be safely inferred from the facts, that the supplies were furnished on request ; which would make a material difference. In *Wing* v. *Mill,* 1 *Barn. & Ald.* 104. the whole court held, that a legal and moral obligation existed. In the case of *Barnes* v. *Hedley* & *Conway,* 2 *Taun.* 184. the court held, that when the parties to usurious securities stripped them of all usury, and the securities were given up and cancelled, by agreement of the parties, and the borrower of the money promised, in consideration of having received the principal, to pay the same, with legal interest, the promise was binding. This case rests upon the same principles, which were recognized by this court, in the case of *Kilbourn* v. *Bradley,* 3 *Day* 356. where the court decided, that if a usurious security be given up, and a new security be taken for the principal sum due and legal interest, the latter security will be good. This case bears not at all upon the case under consideration. The money advanced was a good consideration of the promise to repay it, the usury being expunged. In the case of *Lee* v. *Muggeridge* & al. executors of *Mary Muggeridge,* deceased, 5 *Taun.* 36. it was held, that a feme covert having given a bond for money advanced to her son-in-law, *at her request,* was bound by a promise made by her, after she became discovert. *Mary,* the obligor in that case, had a large estate settled to her separate use. In this condition she executed a bond for money advanced to her son-in-law, at her request. After the death of the husband, and while single, she wrote a letter promising to pay the amount thus advanced. The court, in giving their opinion, say, this is a promise founded on a moral obligation, and that it is a good consideration. I should say, the promise was founded on the advancement of the money, at her request, to her son-in-law, and as she was incapacitated to bind herself, by reason of the coverture, when she received the benefit, and is therefore protected from liability by a stubborn rule of law ; yet if when this rule of law

*Litchfield,*
June, 1828.

Cook
*v.*
Bradley.

*Litchfield,*
June, 1828.

Cook
*v.*
Bradley.

ceases to operate upon her, she will promise to pay, it will bind her.

On the whole, I am not satisfied, that a case can be found in the *English* books, in which it has been held, that a moral obligation is a sufficient consideration for an express promise, though there are many to the contrary, but that it is limited in its application to cases where a good and valuable consideration has once existed, as laid down by the supreme court in *Massachusetts,* once and again adverted to.

I am therefore of opinion, that there is error in the decree complained of, and that the judgment be reversed.

HOSMER, Ch. J. was of the same opinion.

PETERS and LANMAN, Js. dissented.

BRAINARD, J. was absent.

Judgment reversed.