# TRUMBALL *v.* TILTON.

No action can be sustained against an insolvent or bankrupt, upon any promise, agreement, or undertaking to pay the whole or any part of a debt existing prior to his discharge, when such promise, agreement, or undertaking, is made in order to procure the acquiescence of the creditor to the insolvent's proceedings, and is contrary to the agreement with the other creditors and without their knowledge.   All such promises are fraudulent and void.

If a creditor, who signs a composition deed by which his insolvent debtor is discharged, makes a private bargain, the effect of which is to place himself in a better position than the other creditors, he thereby commits a fraud upon them, and such private bargain is void.

Trumball *v.* Tilton.

If, after a discharge has been obtained by operation of law, an insolvent makes a new promise, such promise can be enforced. The debt is due in conscience, and a sufficient consideration exists by force of the original contract and the moral obligation to pay, to sustain the promise.

Where J., the payee of a note, signed a composition deed agreeing to take ten per cent. of his demand, and at the same time made a private bargain with T., the maker, by which the full amount of said note was to be paid: *Held*, that no action could be maintained on such private bargain. *Held*, also, that T., having four years thereafter promised to pay the note, the new promise revived the debt, and an action could be maintained upon the note, the ten per cent. not having been paid.

Whether any distinction is to be taken between a promise made to pay a debt discharged by a composition deed, and one discharged by operation of law, *quære?*

ASSUMPSIT, on a promissory note, dated March 5, 1836, for $65.70, signed by the defendant, and payable to William Jones or order, on demand with interest, and by Jones indorsed to the plaintiff.

The action was commenced September 25, 1848.

The defendant pleaded the general issue, and filed a brief statement of his defence, which was, that the debt was barred by the statute of limitations, and also by a release and discharge of the defendant, signed by Jones, dated March 22, 1842.

The making and indorsement of the note were shown, and the execution by Jones of the deed of discharge or release was admitted. Jones was the owner and holder of the note at the time the release was executed, and continued to be until the first of September, 1848, when he sold and indorsed it to the plaintiff.

The deed of release or composition was signed by Jones and twenty-one others, and was as follows:

" Know all men by these presents, that we, the subscribers, creditors of Jeremiah Tilton, of Northfield, in the county of Merrimack, and State of New Hampshire, finding that the said Jeremiah Tilton is, by losses and otherwise, disabled to pay us our full debts, do severally and respectively agree and bind ourselves, our heirs, executors, and administrators, to the said Jeremiah Tilton, his executors and administrators, to accept and receive of him or them for each and every dollar that he

the said Jeremiah Tilton doth owe, and stand indebted to us, the sum of ten cents in full discharge and satisfaction of all such debts and sums of money as the said Jeremiah Tilton doth owe, and stand indebted to us respectively, so that the said sum of ten cents, to be paid for each and every dollar that the said Jeremiah Tilton doth owe and stand indebted to us, the said creditors respectively, be paid unto us, our several and respective executors, administrators, or assigns, within the space of twelve months next after the date of these presents. And we the said several creditors, for ourselves, our heirs, executors, and administrators, respectively, do hereby covenant and agree, that neither we the said creditors, nor any of us, nor the executors, nor administrators of any of us, will at any time sue, arrest, molest, imprison, nor attach the said Jeremiah Tilton, nor his goods or estate, so as the said Jeremiah shall well and truly pay, or cause to be paid to us, and our heirs, executors, and administrators, the said sum of ten cents for each and every dollar he doth owe and stand indebted to us respectively, within the said space of twelve months next after the date hereof.

" In witness whereof we have hereunto set our hands and seals, this twenty-second day of March, 1842."

" Signed, sealed, and delivered }
   in presence of us." }

The deed was duly sealed and the signatures to the same all properly attested by witnesses.

When the deed of composition was first presented to Jones, he declined signing it : but Tilton representing to him that he must get his creditors all on, or it would do him no good, and that he wanted Jones's name to aid him in the matter, it was finally agreed that Jones should execute the deed ; but he was not to receive the ten per cent., but was to have the whole of his claims paid in full, notwithstanding the deed.

The defendant's creditors were generally settled with according to the terms of the composition deed, but the ten per cent. was never paid to Jones, nor was he settled with. In 1843, and also in 1846, Jones called on the defendant for the payment of the note, and he promised to pay it.

Trumball *v.* Tilton.

A verdict was taken by consent, for the plaintiff, for the amount of the note, on which judgment is to be entered, or the verdict is to be set aside and judgment entered for the defendant, according to the opinion of this court.

*Colby*, and *Pierce & Minot*, for the defendant.

1. The private bargain between Jones, the former holder of the note, and the defendant, was fraudulent and void.

" There can be no doubt that if a creditor who signs a composition deed or agreement, and thereby induces other creditors to sign, makes a private bargain, the effect of which is to place himself in a better position than the other creditors, he thereby commits a fraud upon them, and such private bargain is void." *Bailey*, J., in *Lewis* v. *Jones*, 4 Barn. & Cress. 511. See, also, *Cockshott* v. *Bennett*, 2 Term Rep. 763 ; *Yeomans* v. *Chatterton*, 9 Johns. 294 ; *Wiggins* v. *Bush*, 12 Johns. 306.

In cases of such compositions, each creditor signs in consideration that others do ; and thus the signature itself, in case of any private bargain for additional benefit, operates as a deceit upon the other creditors, and is regarded as such in law, without further proof of intended deceit.

But this case, further than that, shows gross *intended* fraud on the part of Jones. The circumstance that his assent to the composition was necessary to secure that of others, was distinctly stated to him. He lent his name to the deed for the express purpose of deceiving others.

2. The deed of composition in this case operates in law as a release and discharge of the debts, upon the payment of the ten per cent., as specified. The plaintiff, claiming under Jones, cannot now object that the ten per cent. on this debt was not paid within the time limited and has not yet been paid.

It was competent for Jones to extend the time or waive the payment altogether. And that has been done in this case. It was a part of the bargain that Jones should not receive the ten per cent. It was not paid, because it was an express stipulation on his part that it should not be. Can he, or those claiming

under him, now object that something was not done which he expressly agreed and bargained should not be done ?

It has been decided that where creditors, in a composition with their debtor, agreed to take notes for a per cent. in full, and one creditor made a private bargain for a further sum in addition, an action could not be sustained by that creditor on the notes given according to the terms of the composition, although the further sum bargained for had not been paid. It was held that the fraud vitiated the whole transaction. *Howden* v. *Haight*, 11 Adol. & Ellis, 1023.

The principle of the cases seems to be, to leave the creditor committing the fraud without remedy. This is done as a punishment on the creditor for his fraud ; and this too, not from any regard for the debtor who is a party to it, but for the other deceived creditors who are not. It is done, not to shield the conniving debtor, but from good policy and to preserve that strictest good faith between creditors, which the law requires in such cases.

To hold, in this case, that the plaintiff cannot avail himself of the private bargain between Jones and the defendant to claim the whole debt, yet is remitted back to his remedy for the original debt, appears inconsistent. It would be to avoid the fraudulent bargain by virtually carrying it into full effect ; to punish the fraud by securing fully to the party all the advantage contemplated by it. If the plaintiff is now allowed to object that the ten per cent. was not paid within the twelve months, (which was not paid because it was expressly agreed that it should not be received,) and is thus remitted back to the original demand, the object of the fraud will be accomplished by the fraud itself. Such a decision would be holding out inducements to a dishonest creditor, to try to secure to himself better terms than others, because failure would, in cases like this, be in fact success.

3. The plea of statute of limitations is good in this case.

The six years after the note in suit became due expired March 5, 1842.

If it be held that the fraudulent bargain avoided the whole claim, then, being void it was incapable of ratification or revival

afterwards. *Cockshott* v. *Bennett*, 2 Term Rep. 763 ; *Jackson* v. *Duchaise*, 3 Term Rep. 551 ; *Jackson* v. *Lomas*, 4 Term Rep. 166.

But suppose the original claim to remain unaffected by the fraud, how is the operation of the statute to be avoided ? The fraudulent bargain, made at the time Jones signed the composition deed, cannot be availed of, as a recognition of the original claim and a promise to pay it. The fraud renders that bargain entirely unavailable and incompetent in law for any purpose.

The same objection applies to the promises made in 1843 and 1846. Those. promises were clearly but a reiteration and acknowledgment of the fraudulent bargain of 1842, and were made in pursuance. of it. But that bargain and every thing in pursuance of it — those promises, as well as other things — were fraudulent and are incompetent in law for any purpose.

If a bankrupt or an insolvent, after becoming free from his engagements, and having no restraint on his· mind, voluntarily give security for a former demand due only in conscience, such security may be enforced in law. *Cockshott* v. *Bennett*, above cited.

But such· was not the case with the promises made by the defendant in this case.

*Cate & Rogers*, for the plaintiff.

1. The date of the note, March 5, 1836, shows it to have been barred by the statute of limitations before the execution of the deed of compromise, which was March 22, 1842. And consequently, this note was in no way reached or affected by that deed. The note was *then* dead in law, and nothing was due upon it.

The execution of the deed gave Jones no claim upon Tilton for the payment of *this* note, or any part of it, nor did it give him a claim for the per cent. of its amount, for the note was then barred by the statute, and not revived. Nor does it appear that this note was in any way connected with, or contemplated in the deed. But it did appear in evidence, that at the time of the execution of the deed, Jones had a book account

11 *

Trumball *v.* Tilton.

against Tilton. That account was reached and compromised by the deed, and any agreement made by the parties, at that time, also went to the legality of its collection. But this note being then outlawed and not revived, its position was in no way changed by the deed. It stood like all demands barred by the statute — dead in law and liable to be revived by a subsequent promise to pay.

There was no revival of this note until 1843 and then again a subsequent promise to pay it in 1846. These promises are in no way connected with the deed of compromise, and can be neither void nor voidable on the defendant's part. They are not in the least tainted with fraud, having no connection with the compromising creditors. The first promise to pay it was long after the execution of the deed, and could not have been made as an inducement to its execution. The agreement of Tilton to pay Jones his claims in full, was not an agreement to pay this note, for this note was not then a claim existing against Tilton.

2. In this case, the note being outlawed before the deed was made, and long before the promises upon which we rely were given, until revived it was a debt due only in conscience, and Tilton, being under no restraint at the time of making the promises, is compelled by law to fulfil them. See *Cockshott* v. *Bennett*, 2 Term Rep. 763, in which Lord *Kenyon*, C. J., says: " If a bankrupt or insolvent after becoming free from his engagements, having no restraint upon his mind, voluntarily give security for a former demand which is only due in conscience, such a security may be enforced in a court of law."

3. This action is founded upon the promises of Tilton made in 1843 and 1846 ; and, reviving the note in Jones's hands, is good to the plaintiff. Chitty on Bills, 537.

4. If this note had been due and owing on the 22d of March, 1842, and thereby reached and compromised by the deed, (which it was not,) then, by the terms of the deed, it would have been optional with Tilton, whether to have paid the ten per cent. within the year specified in the deed, and thereby to have released himself from his liability thereon, or to suffer the year to elapse without making the payment, and then to have thrown

the note back upon its original standing, leaving Jones his ground of action for the whole amount, (the deed not being complied with.) And then, had the statute of limitations taken effect upon the note, even after the execution of the deed, a subsequent promise, (Tilton not having complied with the terms of the deed, by paying the ten per cent. within the year,) would have revived the note, and given a good ground of action. See Chitty on Contracts, 657.

5. The cases cited by the defendant's counsel are, excepting the dictum in *Cockshott* v. *Bennett*, in no respect analogous to this case.

In each case cited by them, the action was brought to recover the amount of debts due at the time of effecting the compromise deeds, or the petitioning under the bankrupt law — upon promises made before the execution, as inducement to the signatures of the creditors, and by which other creditors were defrauded. *This* action is founded upon the defendant's promises made long after the execution of the deed of compromise, to pay a debt in no way affected by the deed or contemplated in it — a debt for which Jones had no claim upon Tilton at the time of executing the deed, and to which their agreement then made, could have had no reference. And the subsequent promises upon which we rely, could not have been made as inducement to the execution of the deed; nor could they be a fraud upon the compromising creditors, for the compromise deed had been executed years before these promises were made and this note renewed.

EASTMAN, J. The plaintiff in this action, as indorsee, seeks to recover of the defendant the contents of a promissory note made by him on the 5th of March, 1836, for the sum of $65.70, payable to one Jones or order, and by Jones indorsed to the plaintiff on the first day of September, 1848.

The defendant pleads the general issue, and files therewith a brief statement of the grounds of his defence, as by our statute he is permitted to do, instead of pleading the same specially. This defence is twofold — first, that Jones while the holder and

owner of the note, to wit, on the 22d of March, 1842, signed a composition deed, together with the other creditors of Tilton, binding himself to take ten per cent. in full discharge of his debt — and second, that the note is barred by the statute of limitations. The state of the pleadings being such as to leave the matter open to proof by either party, the plaintiff endeavors to avoid these two positions by showing a new promise made by the defendant in 1843 and repeated in 1846. And to this the reply is made, that the promise was part of a corrupt agreement between said Jones and the defendant, in relation to the composition deed, and therefore void.

It is hardly necessary to state the well-known principle that the indorsee of a discredited note, takes it subject to all the defences that can be set up against it in the hands of the indorser. If the grounds of defence therefore to this note would be available against Jones, they would be equally so against this plaintiff.

It appears that this note was dated March 5, 1836, and six years had elapsed before the execution of the composition deed. Consequently the note, being payable on demand, was barred by the statute of limitations at the time the deed was executed. Were it necessary, in deciding this case, to settle the effect which such a state of facts might have upon the interests of these parties, it would be worthy of consideration whether this note, being barred by the statute of limitations at the time the composition deed was executed, could be considered as a debt legally included within the scope of the deed, or to be affected thereby. By the terms of the deed of composition, the creditors agreed to accept of Tilton, for each and every dollar that he owed and stood indebted to them, the sum of ten cents, in full discharge and satisfaction of all such debts and sums of money as said Tilton owed and stood indebted to them respectively. If this language be construed to embrace not only all such debts as were legally due and owing, but also all such as were due in conscience, then this note would be included among those to be affected by the deed. But if not — if only those that could be legally enforced at the time, are to be affected,

then this note is not among the number contemplated by the deed, for it then had no legal vitality, being barred by the statute. Had Tilton's property all been assigned, and a composition deed been executed, by the creditors agreeing to take such a per cent. upon their claims against him as the property would pay, it would scarcely be conceded by the other creditors, that this debt should be allowed as a legal, existing claim, on which a dividend should be made. The deed before us, it is true, is not such in its terms, nor based upon such a precise state of facts. It is a special contract between the creditors and the debtor to take a specific per cent.; yet if Tilton had made a tender of ten per cent. upon all other claims which Jones had against him, (provided he had others,) and Jones had refused to accept it, on the ground that he intended this debt also to be included, and if Jones subsequently instituted a suit upon this and his other claims, alleging that the ten per cent. had not been paid according to the deed, would not the tender be held a good defence to the action? and would not the court hold also, that this note, not being at the time a valid debt unless revived by a new promise, could not be included, and therefore no tender was necessary to be made upon it? Even were this the only claim which Jones had against Tilton at the time of the execution of the composition deed, the bare fact that Jones signed that deed, could not of itself, without some promise or undertaking on the part of Tilton, revive the claim. If then, by the terms of the deed, Jones could not compel the note to be included, and receive his ten per cent. thereon, it could not be held that Tilton should be permitted to include it or not, as should best suit his purposes. But the disposition of the case does not require a decision of this point; nor is it necessary for us to settle to what conclusion we might arrive in regard to it upon more mature consideration. And we propose to examine the case, as though this debt was one of those actually included within the scope of the composition deed, and designed to be affected thereby.

From an examination of the authorities, the doctrine appears to be well settled, that no action can be maintained upon a private bargain, between an insolvent debtor and his composition

Trumball *v.* Tilton.

creditor, to pay all or any part of a debt not provided for in the composition deed. The effect of such a bargain is to place the creditor in a better position than the other creditors, and is a fraud upon them; and the promise or bargain so made, is held to be void. In the language of *Bailey*, J., in *Lewis* v. *Jones*, 4 Barn. & Cress. 511, cited by the defendant's counsel, "there can be no doubt that if a creditor who signs a composition deed or agreement, and thereby induces other creditors to sign, makes a private bargain, the effect of which is to place himself in a better position than the other creditors, he thereby commits a fraud upon them, and such private bargain is void." In *Cockshott* v. *Bennett*, 2 Term Rep. 763, a suit was instituted upon a note given for the balance of the debt before signing the composition deed. There was also a subsequent promise to pay the note. It was held that the note, being given for an immoral consideration, was void; and that no subsequent promise could make it a debt binding upon the maker. In *Jackson* v. *Lomas*, 4 Term Rep. 166, the same doctrine is recognized. This was an action upon an agreement to pay the whole debt in case the creditor would sign the deed — and it was held, that the action could not be maintained. To the same point are *Howden* v. *Haight*, 11 Adol. & Ellis, 1033; *Yeomans* v. *Chatterton*, 9 Johns. 294; and *Wiggins* v. *Bush*, 12 Johns. 306.

In these and all other cases which we have been able to find, that bear upon the question before us, the actions were brought upon some promissory note or other agreement which had been the inducement for the execution of the composition deed, or in some way corruptly connected therewith — or upon promises made to carry out those agreements. The consideration has been the *new* and corrupt bargain, not the consideration of the original debt. All such contracts, bargains, and agreements are *contra bonos mores* and void.

But while the law appears to be well settled, and upon sound principles, prohibiting the enforcement of all corrupt agreements between creditors and their insolvent debtors, which are in any way connected with the insolvent's discharge, it is equally well determined that a new promise voluntarily made, after the dis-

charge of a bankrupt or insolvent, to pay a just debt existing prior to the discharge, is binding upon the promisor, and will be enforced in a court of law. The moral obligation still exists, although the legal one has been discharged; and this moral obligation, coupled with the original consideration of the debt, is sufficient to support a new promise to pay. The English doctrine upon this point may be found in 1 Chitty's Pleading, 54; *Cockshott* v. *Bennett*, 2 Term Rep. 763, before cited; *Penn* v. *Bennett*, 4 Campbell, 205; *Blackbourn* v. *Ogle*, 8 Price, 526; *S. P. Drew* v. *Jeffries*, 8 Price, 531, note; *Brix* v. *Broham*, 8 Moore, 261; and *Lobb & Knight* v. *Stanley*, 1 Davis. & Merriv. 635. This last case was decided in the Queen's Bench in 1844. The action was assumpsit for goods sold and delivered, and on an account stated. The plea was the defendant's bankruptcy certificate and discharge, and the replication a new promise. To sustain the action, the plaintiffs introduced in evidence the following memorandum in writing: "Mr. Stanley begs to inform Messrs. Lobb & Co. that he will take an early opportunity of settling their accounts, but Mr. Stanley objects to give his bill." This memorandum was held to contain a sufficient promise to revive the claim barred by the bankrupt's certificate, and judgment was entered against him. It was held, also, that the memorandum was sufficiently signed to bind the defendant under the statute of 6 Geo. 4, c. 16, which requires that all contracts or agreements to pay a debt barred by a certificate of bankruptcy shall be in writing and signed by the bankrupt, or by some person thereto lawfully authorized by him.

Several American decisions have been made, sustaining the same views. Among them are *Maxim* v. *Morse*, 8 Mass. 127; *Shippy* v. *Henderson*, 14 Johns. 178; and the case of *Field's estate*, 2 Rawle, 351. *Maxim* v. *Morse* was debt upon a judgment; plea, a discharge under a commission of bankruptcy; and replication, a new promise. Upon issue joined on the promise, the plaintiff obtained a verdict, and judgment was ordered thereon. In *Shippy* v. *Henderson*, it was decided that where a debt has been barred by the defendant's discharge under an

Trumball *v.* Tilton.

insolvent act, and he afterwards promises to pay it, it is proper for the plaintiff to declare upon the original cause of action, without noticing the subsequent promise. *Thompson,* J., says : " I see no reason why this case should differ from that of *infancy,* or that where the action is barred by the statute of limitations." In the case of *Field's estate, Gibson,* C. J., says " It seems to be agreed that a debt discharged by a certificate of bankruptcy, is a valid consideration for a *promise.*" " It is settled by a train of decisions, not now to be questioned, that a debt discharged by a certificate of bankruptcy is an available consideration for a new promise." To the same effect is *Brown & ux.* v. *Collier,* 8 Humph. 510 ; *Graham* v. *Hunt,* 8 B. Monroe, 7 ; and *McNair* v. *Gilbert,* 3 Wend. 344.

There is some diversity of opinion among the decisions as to what the character of the new promise shall be, in order to make it effectual. By some it is held that it must be of an equally high degree with the debt that is to be revived, and that a specialty, for instance, cannot be revived by a parol promise. Such is the doctrine of the cases cited from 2 Rawle, and 8 B. Monroe. While in the case from 8 Mass., a simple promise was held sufficient to maintain an action of debt on a judgment ; the court remarking that the pleadings were very similar to those which frequently arise under the statute of limitations.

Whether there is a distinction to be taken between promises made to pay debts discharged by a composition deed, and those discharged by operation of law, such as bankruptcy and insolvency, is, perhaps, not fully settled. In the one case a party agrees to take a certain per cent. and discharge his debt, and, upon that per cent. being paid, the debt becomes extinguished. It may be regarded as an accord and satisfaction between the parties ; the creditor having agreed, in view of the circumstances, either from benevolence or policy, to discharge the debt. In the other case, except under some special State acts, where a portion of the creditors are required to join in and assent to the proceedings of the insolvent, the discharge is procured without the acquiescence of the creditor. A small dividend may or may not

Trumball *v.* Tilton.

be paid. The law takes away all remedy, and the debt appears equally to be extinguished. In either event the result is the same, the loss of the whole or balance of the debt. In the one case it may be considered voluntary, being the act of the creditor himself. In the other, involuntary, being the operation of law.

This question has been considered in New York, in the case of *Stafford* v. *Bacon*, 25 Wend. 384, and also in 1 Hill, 533. The facts were these, Bacon owed Stafford $2370.12, and Stafford signed a composition deed to discharge the debt upon receiving one third of the amount due. The one third was satisfied, and Bacon subsequently promised to pay the balance when able. A suit was brought to recover the balance, his ability being shown. And an opinion is given at some length by *Bronson*, C. J., wherein the promise is held sufficient to sustain the action. In 1 Hill, the opinion of the court is given by *Cowen*, J., and it is there held, that the promise will not sustain the action ; that the signing of the composition deed, and the payment of the per cent. was a discharge of the debt by accord and satisfaction, and " that when a debt has been discharged by accord and satisfaction, for less than its amount, there remains no such moral obligation to pay the balance as will support a subsequent promise to that effect. Otherwise of a discharge which is not the mere *act of the party*, but by *operation of law*, for example, an insolvent discharge." This conflict of opinion in these two reports of the same case, is explained in a memorandum in the *third* of Hill's Reports, where it is stated that the opinion reported in the 25 Wend., was inadvertently handed to the reporter by the Chief Justice ; that the views there expressed, were subsequently reconsidered, and the whole court acquiesced in the opinion given in 1 Hill. Several cases are cited to sustain this opinion, but it is submitted, with all due respect to the very learned judge, who drew up the opinion, that they are not based upon facts very similar to those in *Stafford* v. *Bacon*. The leading cases cited are, *Cook* v. *Bradley*, 7 Conn. 57 ; *Mills* v. *Wyman*, 3 Pick. 207 ; *Snevily* v. *Read*, 9 Watts, 396 ; and *Eastwood* v. *Kenyon*, 3 Perry & Davidson, (Queen's Bench,)

decided in 1840. *Cook* v. *Bradley*, was upon an obligation given by a son for necessaries previously furnished to his father by the plaintiff. Held that the consideration was insufficient; that it was merely a moral one, and " that a moral obligation is available as a consideration for an express promise in those cases, and those only where a *prior legal* obligation has existed, which by some statute or stubborn rule of law cannot now be enforced." *Mills* v. *Wyman*, was the case of the promise of the father to pay for necessaries furnished for the son by the plaintiff, after the son became of age. Held, that the promise was based upon a moral obligation only, and could not be enforced; that " the general position that a moral obligation is a sufficient consideration for an express promise, is to be limited in its operation to cases where a good or valuable consideration has once existed." *Snevily* v. *Read* was founded upon a new promise made by a defendant, to pay a debt after the defendant had been discharged on a *ca. sa.*, and it was held that the arrest and discharge *satisfied* the debt, and that no action could be maintained upon the new promise. *Eastwood* v. *Kenyon*, was a promise made by the husband of a minor to pay for money expended by the plaintiff to improve the lands of the minor before the intermarriage, and the same doctrine is laid down as in *Cook* v. *Bradley* and *Mills* v. *Wyman*. In all of these cases, it is conceived that the facts differ somewhat materially from those in *Stafford* v. *Bacon*. *Snevily* v. *Read* is perhaps the most applicable of either, and yet we find, in the same court, a decision running directly counter to that of *Stafford* v. *Bacon*. It is *Willing* v. *Peters*, 12 Sergeant & Rawle, 177. This was an action brought to recover the balance of a debt discharged by a composition deed, the facts being almost precisely like those in *Stafford* v. *Bacon*. And it was there held, that " a promise by a debtor, after the execution of a voluntary release under seal by the creditor at the debtor's request, to pay the balance of the debt, is founded on a sufficient consideration, and is binding." In *Cook* v. *Bradley*, *Mills* v. *Wyman*, and *Eastwood* v. *Kenyon*, no legal consideration had ever existed between the parties to the engagements. They were all *merely* moral obligations, and upon the facts

stated, appear to have been decided upon correct principles. But in *Stafford* v. *Bacon*, a good and valuable and legal consideration had once existed, a consideration of some two thousand dollars, which, although discharged, had never actually been paid. The amount of the balance at the time of the institution of the suit was $2113.57.

Unquestionably, the reception of a per cent. agreed upon by the terms of a composition deed, is an accord and satisfaction, which extinguishes the debt. But has there not once existed a *valuable* and *legal* consideration for the balance? The party benefited by the discharge may afterwards become affluent, while the composition creditor may be in straitened circumstances; and if he sees fit to make a promise to pay the balance, and has not honesty and honor enough to fulfil it, is there any thing in public policy or private morals that forbids its enforcement in a court of law? Is it not quite as easy to discover a binding moral obligation to fulfil such an engagement, and pay such a debt, as it is to see one where the debt has been discharged by operation of law?

But, inasmuch as the "ten per cent.," agreed to be paid by the terms of the deed before us, has never been satisfied, the the question decided in *Stafford* v. *Bacon*, does not require to be settled here.

We arrive then at these conclusions; that no action can be sustained against an insolvent or bankrupt upon any promise, agreement, or undertaking to pay the whole or any part of a debt existing prior to his discharge, when such promise, agreement, or undertaking is made to procure the acquiescence of the creditor to the insolvent's proceedings, and is contrary to the agreement with the other creditors, and without their knowledge. All such promises are fraudulent and void.

That after a discharge, obtained by the operation of law, a new promise made by the insolvent, to pay a debt discharged, can be enforced. That the debt is due in conscience, and a sufficient consideration exists by force of the original contract and the moral obligation to pay, to sustain the promise. And that, in instituting a suit for the recovery of such a debt, it is

proper to declare upon the original cause of action. If the plaintiff can sustain his action upon independent grounds, without calling to his aid in any way the corrupt agreement, he can recover. But if he require any assistance from the illegal transaction to establish his claim, he must fail.

In addition to these conclusions, a *quære* is suggested, whether any distinction should be recognized between a promise to pay a debt discharged by a release or composition deed, and one discharged by operation of law.

The general principle that after a demand has been barred by the statute of limitations, a new promise will take it out of the operation of the statute, is too well understood in this State, to require examination. *Exeter Bank* v. *Sullivan*, 6 N. H. Rep. 124; *Eastman* v. *Walker*, 6 N. H. Rep. 367; *Kittredge* v. *Brown*, 9 N. H. Rep. 377. It is sufficient also to declare upon the original demand, without any averment of a new promise. The matter which takes the case out of the statute may be given in evidence in answer to the defence of the statute. *Belton* v. *Cutts*, 11 N. H. Rep. 170.

In the case before us, an action is brought upon a promissory note, barred by the statute of limitations, and barred also by a composition deed, if the terms of that deed had been complied with. Such an agreement, however, was made between Tilton and Jones, in relation to the execution of the composition deed, and the payment of the debt, as rendered the transaction between them fraudulent, and would prevent Jones or any indorsee of the note from recovering upon that agreement. But, *after* the execution of the deed, new and independent promises are made to pay the note; one of them four years after the date of the deed. These promises were such as would take a note out of the operation of the statute of limitations, or furnish good cause of action to recover a demand otherwise barred by a discharge brought about by operation of law, if not by the act of the party. They are promises, not in anticipation of insolvency, or by way of inducement to effect any object, but are made, one of them at least, when it must be presumed the defendant well knew that the note was due only in conscience.

Trumball *v.* Tilton.

They are made to pay a note of good original consideration, good in conscience ; and we can discover no valid reason why they should not be enforced. There must therefore be,

*Judgment on the verdict.*