Updike *v.* Titus.

## UPDIKE *vs.* TITUS and others.

The law implies no promise to pay for services rendered by members of a family to each other, whether by children, parents, or other relatives.

The rule is well settled, that a mere moral obligation constitutes no legal consideration for a contract.

A widow and her son were living together; the former performed certain services, such as washing and ironing, &c., the latter contributed somewhat to the support of the family. The mother lent to the son, from time to time, small sums of money. The son, having become embarrassed, executed a mortgage to his mother, the consideration being the services and the loans aforesaid.

*Held,* that, as against creditors, the loans constituted a valid consideration ––contra as to the services.

*Edward W. Scudder,* for complainant.

*Beasley,* for defendants.

THE CHANCELLOR. The bill is filed to foreclose a mortgage given by Charles G. Updike to his mother, Elizabeth Updike, for $1200. The execution of the mortgage is fully proved, but its validity is contested by a judgment creditor of the mortgagor, and the purchaser of the equity of redemption in the mortgaged premises, as without

consideration, fraudulent and void as against creditors. The consideration of the mortgage, as shown by the evidence of the mortgagee and mortgagor, (both of whom have been examined) was money lent and services rendered by the mortgagee to the mortgagor.

The money was advanced in small sums, extending, during a period of several years, from 1847 till 1854. The services also extended through a period of over eight years, and consisted of keeping house, washing, ironing, mending, and other similar domestic labor.

From the evidence, it appears that the husband of the complainant died in March, 1846, leaving a small property and a family of children, of whom the mortgagor was one. By his will, he left two houses and a lot of ground in the city of Trenton, with the bulk of his personal property, to a daughter and son in law, and in consideration thereof directed that they should take care of and provide for his wife Elizabeth a comfortable home and living while she remained his widow. Two of the testator's daughters were also to have a home in the house while they remained single. The family continued to occupy the house after the death of the testator. The son in law, to some extent, provided for the family until 1854, when he removed. In 1855, the house was sold under execution, and purchased by the mortgagee, part of the family, with the mortgagor and his mother, still continuing in the house. The mortgagee continued a member of the family from the time of his father's death, when he was of age, till the date of the mortgage, with the exception of a year, when he was in California. No account had been kept of these loans or services—no contract had been entered into for their performance, and no promise made for their payment.

In 1857, the complainant, being largely in debt and fearing trouble from his creditors, proposed to execute the mortgage to his mother, to secure her claims in preference to those of other creditors, which was accordingly done.

So far as relates to the claim for services rendered, the mortgage is without consideration and fraudulent as against creditors. The law implies no promise to pay for services rendered by members of a family to each other, whether by children, parents, grand parents, brother, step children, or other relations. No action can be maintained for such services in the absence of an express contract or engagement to pay for them. The rule rests upon the simple reason, that such services are not performed in the expectation or upon the faith of receiving pecuniary compensation. Ordinarily, for a service rendered, the law implies a promise to pay corresponding with the value of the service; but for services rendered by members of a family to each other no promise is implied for remuneration, because they were not performed in the expectation, by either party, that pecuniary compensation would be made or demanded. The authorities upon this subject are numerous and decided, and the principle upon which they rest too clear for doubt.

The services rendered in such cases are mutual, and it may be often difficult to decide upon which party the principal benefit is conferred. In this case, during a part of the period for which these services are claimed, the son owned the house in which the mother lived, and not only furnished her a home, but made the principal provision for the family.

I think it perfectly manifest, from the testimony of the complainant herself, that no remuneration for her services was contemplated when they were rendered or thought of by her until the son proposed to give her the mortgage. Compensation would neither have been demanded or tendered but for the embarrassments of the son. There was clearly no legal liability for their payment; and if it should be admitted that the son was morally bound to pay for the service (which is by no means clear) the rule is well settled that a moral obligation constitutes no legal consideration for a contract. The rights of the creditors,

therefore, are not altered by the voluntary obligation to pay for the services. As to them, the case stands as if no mortgage had been given. *Chitty on Con.* 45, and cases cited in note; *Beaumont* v. *Reeve*, 8 *Queen's Bench* 483; *Hack* v. *Stewart*, 8 *Barr*. 213; *Cook* v. *Bradley*, 7 *Conn*. 57; *Mills* v. *Wyman*, 3 *Pick*. 207.

The claim for money advanced rests upon a somewhat different ground. Undoubtedly the advance of money by a parent to a child may be, and perhaps usually is presumed to be a gift, and not a loan. *Chitty on Contracts.*

But that presumption is by no means conclusive, and is open to be rebutted by the situation and circumstances of the parties. In this case, I think, the grounds for deeming it a loan are quite as strong as those for holding it as a gift. The mother was advanced in years, infirm, and possessed of very small means; the son in the prime of life, in active business, and more capable of taking care of her money than the mother. It was natural, under the circumstances, for her to trust him with her funds, though, perhaps, with not a very firm hope of repayment. The son, moreover, swears that the advance was made as a loan. I shall so regard it. This constitutes a good consideration for the mortgage, though barred by the statute of limitations at the time of its execution. *Beaumont* v. *Reeve*, 8 *Queen's Bench* 487, *per Lord Denman; Cook* v. *Bradley*, 7 *Conn*. 57; *Chitty on Con*. 45, *note* 2.

The complainant is entitled to a decree for the amount of money advanced to the son with interest.