Curia, per Woodworth, J.
This was an action of debt on a. bond, conditioned that Keyes, who. had been arrested on a ca..sa. should, remain, a faithful prisoner.
*It appeared that a judgment was obtained in August term, 181.6,. in.favor of Hart.& Lay, against Keyes-& Bronson,, for $412. The judgment was in assumpsit. In the vacation following, .a .ca. sa, issued, on -which Keyes was arrested, and shortly after escaped. -In November, .1816, a suit was commenced against the plaintiff (the sheriff) for the escape;. and judgment recovered in «May term,. 1817. The amount of . this .recovery, Albert H. Tracy, attorney for .Hart & .Lay, paid, to them in March, 1818; and in November, 1819, the plaintiff paid the amount to- Tracy.
On the 14th of January, 1817, an alias ca. sa. issued against: Bronson, on which he was arrested, and paid $122. Bronson and the sheriff then left Tracy.’s office. .
The bond executed by- the defendants recited that the ca.. sa. issued in an-action of debt.
It also.appeared in evidence, that when the defendants executed the bond, it was the understanding between them that Keyes was. to go home immediately.
• The defendant, moved for a nonsuit.
1. Because the ca. sa.. on which Keyes was arrested, was not.produced.
2. Because Tracy testified that the ca. sa. was in assump ■ .sit, and the bond recited a ca. sa. in debt.
3. Because Bronson had been discharged from the alias ca. sa. by the consent of Lay.
As to the first objection; the bond admitted the ca. sa. and the plaintiff was not obliged to produce it.
As to the second; the bond is not fully set out in the case. The recital.is, that the ca. sa. issuéd on a-judgment in an action of debt. The ca. sa. was correct; the,defendant was arrested on it. The mistake is merely in this : that the sheriff inserted debt- in the place of assumpsit. -The variance is not material) because the bond would have *143 Been valid, had the description of the action been entirely omitted. It would have been sufficient to say, that the defendant has been arrested by virtue of a ca. sa. issued on a judgment, stating the amount of that judgment. It is not even suggested that the amount .of the judgment was not truly inserted in the ca. sa. *It follows, therefore,- that' the description of the action was surplusage;, an'd according tó the established rule, surplusage consisting, of immaterial matter, never vitiates.
As to the third objectiori, there had no evidence been given, in that stage of the cause, that Bronson had been dis charged.
The court properly overruled the motion for a nonsuit.
The defendant then called Bronson, the co-defendant with Keyes. He was sworn, and about, to testify, when the plaintiff objected, on the ground of interest, urging, that if he testified to any thing, it.would goto defeat the.plaintiff’s recoyery; .and that if the plaintiff recovered .against Keyes and Landon, Bronson would be answerable to Keyes for one half of the recovery, it appearing that the judgment against Keyes and'Bronson was obtained on a note given by them as joint partners. The defendants, to avoid this objection, offered to show that Bronson had been discharged under the insolvent act of 1813 ; and also offered a release from Landon to, the witness, contending that, as the defendants had pleaded separately,, such a, release would render the witness competent to testify in his (L.’s) defence. The evidence proposed to be given by Bronson was, that after he was arrested,, he paid.8122 on the ca. sa. and arranged the balance, with the now plaintiff, and was, therefore, discharged from the arrest by the plaintiff and Lay.
It seems to me, the witness had a direct interest to defeat the recovery. He was equally liable for the debt. If the plaintiff recovered in this cause, such recovery, with a consequent payment, would extinguish all further claim arising in consequence of the judgment of Hart and Lay against Keyes and Bronson. Admitting that, after this recovery, Landon should pay the whole to the plaintiff, Keyes would be liable to Landon for the money paid. On his payment, *144 a °f action would accrue against Bronson for one half But without this, a payment by Landon must be considered as a payment made by Keyes’ procurement; for it would ^e made on a bond which Keyes had prevailed on Landon to execute for his benefit and enlargement. I do not perceive any material difference, therefore, whether Landon had advanced *the money for KeyeS when he ivas arrested, or subsequently paid it, in consequence of a recovery on the bond he had given. As between him and Keyes and Bronson, it was enough that the former had paid, or caused to be paid; nor could Bronson defeat a recovery against himself, because satisfaction was made in the latter way.
The claim of Bronson would arise, if at all, subsequent to the discharge under the insolvent act, and, therefore, cannot be affected by it.
As to the release of Landon ; this does not remove the objection. There is no privity between Landon and Bronson. That is between the former and Keyes; nor do I know on what ground Landon could maintain an action for money paid, against Bronson, to him (Landon) a stranger. Keyes might have his remedy over against Bronson, which Landon could not control. I think the judge correctly excluded the witness, [1]
The defendant then called Lay as a witness. He testified, that he understood that Bronson was discharged on the alias ca. sa.; that he left the business with Tracy, his attorney, to manage as he thought best; that the witness (Lay) made no specific arrangement with Ransom, the sheriff, for the discharge of Bronson. He thought it was understood between him and the sheriff, that upon Bronson’s paying 122 dollars, the sheriff might discharge him; but it was not to affect the sheriff’s liability to Hart and Lay, for the escape of Keyes.
From this evidence, I think it is to be inferred that the sheriff did discharge Bronson with the consent of Lay •; and *145 it presents an important question upon the legal effect of the discharge.
It appears that the escape of Keyes was in the August Vacation of this - court, 1816, and on the 18th day of November, of the same year, Hart and Lay commenced an action for the escape against the sheriff. While that suit was pending, (January 14th, 1817,) the alias' ca. sa. was issued against Bronson, on which he was taken, and then paid the 132 dollars, and was discharged. -The case does not state the day on which this arrangement took place but it was evidently *shortly after the ca. sa. issued and previous to May term, 1817, when the judgment was obtained against the now plaintiff. The probability is, it was shortly after January 14th, 1817, and undoubtedly in sufficient season to have enabled the sheriff to avail himself of the legal effect of the discharge as a defence to the action commenced against him for the escape. He did not interpose any defence, but voluntarily paid the recovery against him, in 1819, in pursuance of an arrangement so to do long previous. Tracy paid Hart and Lay their judgment in March, 1818. This he undoubtedly did in consequence of the sheriff having, shortly after the escape of Keyes, agreed that the judgment should be applied on the sheriff’s bill against Tracy, for fees, which was afterwards done.
There can be no difference of opinion as to the justice of this case. Keyes and Bronson have never paid any thing beyond the 122 dollars ; and the sheriff has satisfied the judgment against them. The rules of law, however, are 'inflexible, and cannot bend to the hardship of a particular case. If, in judgment of law, the discharge of Bronson by the consent of Lay, satisfied and extinguished the judgment, then the now plaintiff acted at his peril, in waiving the defence which it Was competent for him to make ; and subsequently, in his own wrong, malting payment.
The law applicable to this point was considered in Lathrop v. Briggs, (8 Cowen, 171,) where the cases are collected. A discharge of the debtor from arrest on execution, by the creditor’s consent, extinguishes the judgment. (2 Mod. 136. 1 T. R 557. 4 Burr. 2482. 7 T. R. 420. *146 5 John. 364. 16 id. 181. 2 East, 243.) These author!* ties proceeded on the ground that the plaintiff received a satisfaction in law, by having his debtor in execution That this principle is applicable to a case where there are several defendants, and one is taken and discharged, was decided in Clark v. Clement & English, (6 T. R. 525,) where it was held, that if a plaintiff consents to discharge one of several defendants taken on a joint ca. sa. he cannot afterwards retake him, or any of the others. In that case, after one of the defendants had been taken and discharged on certain terms, a second ca. sa. was *issued, on which he was again arrested. The motion was to show cause why he should not be discharged, and satisfaction entered on the roll. After argument, the rule Was made absolute.
If the doctrine, then", is well settled, that where there is but one defendant, his discharge after arrest on a ca. sa. by the plaintiff, operates as a satisfaction of the judgment, it seems to follow, that where there are several defendants, all are discharged. [1] Upon what principle is it, that after the discharge of one, you can not arrest the other ? It must be, that the judgment was no longer in force; for if it is, execution follows of course. If, then, Keyes had not been arrested when Bronson was discharged, on the authority of the case cited, to which I subscribe, Keyes could not have been legally arrested. But he had been previously arrested, and escaped. Will this produce a different result ? I do not perceive any well founded distinction ; for if the judgment is to be considered as legally satisfied, Hart and Lay have no cause of action against the sheriff for an escape; and consequently, the sheriff could not have recovered the amount of the judgment on the bond. The defendants would have been protected against a recovery, unless, perhaps, for nominal damages.
This case does not depend on the doctrine that the principal shall do no act to injure the surety; but on the ground *147 that Lay, by his act, discharged the judgment'; and if so, the foundation upon which damages are claimed falls to the ground. While I have no hesitation in saying the defence is unjust, inasmuch as if the preceding view be correct, the defendants,-in a court of law, get’rid'of a large judgment without the actual payment of more than a small portion, I have ntit been able to arrive át a conclusion in favor of their liability. Judgment must be entered for'the
defendant.
Judgment for the defendant.

 The old rules relative to the exclusion oí witnesses, on the ground o$ interest, are abolished by § 398, 399, N. Y. Code. See also Washington Bank v. Palmer, 2 Sanf. S. C. R. 686. Mesick v. Mesick, 7 Barb. 120.

 Quere, the effect of article second, § 25 to 29, "of Revised Statutes, 4th ed. 167, 8, as to the above doctrine? See also Bank of Poughkeepsie v. Ibbotson, 5 Hill, 461. Hoffman v. Dunlop, 1 Barb. S. C. Rep. 185.