## Snevily *against* Read.

The arrest of a debtor upon a *capias ad satisfaciendum*, and a discharge from the arrest by the consent of the creditor extinguishes the judgment: and it does not even remain as a good consideration for a subsequent promise to pay: but if the debtor be discharged in consideration of a promise to pay, such promise is binding on him and may be enforced by action.

ERROR to the common pleas of *Dauphin* county.

Alexander Read, surviving James Gray, against John Snevily. This was an action of assumpsit in which the following declaration was filed:—

" John Snevily late of the county aforesaid, yeoman, was summoned to answer Alexander Read, surviving James Gray, deceased, of a plea of trespass on the case, &c.    Whereupon, the said Alexander, by his attorney, complains—That whereas, on the 15th day of March, A. D. 1830, Alexander Read aforesaid, and James Gray, under the name and firm of Read & Gray, recovered a judgment in the common pleas of the county of Schuylkill, against the said John Snevily, for the sum of two hundred eighty-five dollars and eighty-two cents debt, and five dollars and sixty-two cents costs, being numbered on the records of said court 62, of March term, A. D. 1830; and whereas, a writ of execution called a *testatum capias ad satisfaciendum* was sued out by said Read & Gray upon said judgment, directed to the sheriff of the county of Dauphin, No. 75 of July term 1832, against him, the said John Snevily for the said debt and costs, and the said writ of execution being

[Snevily v. Reed.]

delivered to the said sheriff of Dauphin county, he, the said sheriff, arrested the said John Snevily at Harrisburg, in the said county of Dauphin before the return day of the said writ of execution, to wit, on the 27th day of June, A. D. 1832, and the said John Snevily being then and there so arrested, and in custody of the said sheriff, Samuel Shoch, Esq., the attorney for the said Read & Gray, at the special instance and request of him, the said John Snevily, discharged him, the said John Snevily, from the arrest and custody of the said sheriff on the said execution, without the said John Snevily having paid or satisfied the said debt and cost or any part thereof, and the said sheriff then and there made return of the said writ of execution, to the said court of common pleas of Schuylkill county that he had taken the body of the said John Snevily, and that he, the said John Snevily, was discharged by S. Shoch, Esq., attorney for the said Read & Gray, whereby the said judgment of them, the said Read & Gray against the said John Snevily in the said court of common pleas of Schuylkill county, became satisfied and extinct.

And whereas, afterwards to wit, on the first day of January, A. D. 1839, at the county aforesaid, the said debt of two hundred eighty-five dollars and eighty-two cents, with interest from the said 15th day of March, 1830, and costs eight dollars and thirty-six cents, being wholly unpaid, he, the said John Snevily well knowing the same, and in consideration of the said debt and his being discharged from arrest as aforesaid by the said plaintiffs, undertook and promised to pay to the said Alexander Read surviving James Gray, who had deceased, the said sum or debt of two hundred and eighty-five dollars and eighty-two cents, with lawful interest on the same from the said 15th day of March, 1830, and the said costs when he should be thereto required—nevertheless, the said John Snevily, though often required, the said debts and cost unto him the said Alexander, hath not paid, nor any part thereof, but the promise and undertaking of him, the said John Snevily so as aforesaid made, wholly disregarding, he, the said John Snevily, to pay the said debt and costs to him, the said Alexander Read, surviving the said James Gray, deceased, hitherto hath refused, and still doth refuse, to the damage of the said Alexander Read, six hundred dollars, and therefore he brings suits," &c.

The plaintiff gave in evidence the record of the original judgment against the defendant, the *capias ad satisfaciendum*, and the return of the sheriff "discharged by S. Shoch, attorney for plaintiff," and then offered the following deposition of Samuel Shoch, Esq.

" In pursuance of the annexed rule to take depositions on the part of the plaintiff, personally appeared before me, Thomas Lloyd, Esq., a justice of the peace in and for the county of Lancaster, Pa., aforesaid, at my office in Columbia, Lancaster county aforesaid, on Thursday, the 21st day of November, 1839, Samuel Shoch, who being by me first duly sworn according to law, deposed and said,

ix.—2 i*

[Snevily v. Reed.]

that sometime before June, 1832, but how long before, he cannot exactly recollect, he was employed by the firm of Read & Gray of Philadelphia, consisting of Alexander Read and James Gray, to collect a debt due the firm by John Snevily, the defendant in the above stated case, on a judgment note for two hundred and eighty-five dollars and eighty-two cents, which had been entered on the records of the court of common pleas of Schuylkill county, to March term, 1830, No. 62, and also on the records of the court of common pleas of Dauphin county, to April term, 1830, No. 77, before he was so employed. That a *testatum fieri facias* and *capias ad satisfaciendum* was issued to Dauphin county from Schuylkill county, to July term 1832, which was delivered to Jacob Seiler, Esq., sheriff of Dauphin county. That John Snevily repeatedly promised to deponent that he would pay the debt interest and costs due on the said execution and judgment. That on the 27th of June 1832, sheriff Seiler and John Snevily aforesaid came to the office of deponent in Harrisburg, and the said Snevily fraudulently and falsely represented, that he would have funds in the Harrisburg Bank on the following day, and that he would give deponent a check on the said bank for one hundred and fifty dollars, which, if paid should be a credit to that amount on the judgment of Read and Gray against him—that deponent accepted the check on those terms, and gave defendant a conditional receipt in accordance. That on the day following, deponent presented the check at the said bank during banking hours, and received for answer that John Snevily had no funds there, and there were no funds there to meet and pay the check—that Snevily on that day or a day or two after absconded from Harrisburg, and was absent several months—that this deponent has never received a single cent in payment or on account of the said debt or judgment, nor has the plaintiff been satisfied or paid in any way or manner, so far as this deponent is informed—nor has deponent, nor plaintiffs ever received a cent on the said check—that the above claim still remaining in this deponent's hands, for collection, he (the deponent) had frequent negotiations with the defendant Snevily, relative to the payment of the said debt, in all of which he always admitted his indebtedness, and frequently during the years 1836, 1837, and 1838, he promised to pay this deponent or the plaintiffs, the whole amount due, but has never paid any thing. That sometime in the winter of 1836 or 1837, deponent met John Snevily in Philadelphia, and spoke to him about this debt—when Snevily told this deponent that he (Snevily) was endeavoring to compromise with his creditors in Philadelphia, and that he believed he would succeed—but that he would not ask a compromise of the debt due by him to Read & Gray, for that he intended to pay them in full, and which payment he would make in a short time. James Gray one of the plaintiffs in the judgment note, on which the execution issued, is dead—having died before the bringing of this suit. The deponent has no interest in this suit

of any kind either as attorney or otherwise—having given up to James M'Cormick, Esq., the whole business before this suit was brought—and this deponent never had any interest as attorney either beyond the expectation of a fair compensation for his professional services about which he had no agreement or understanding with his clients. In all these promises of payment by the defendant John Snevily to the plaintiff of the amount of debt due by him (Snevily) there has been no condition annexed—but they were always unqualified and absolute."

Sworn and subscribed before me at my office, this 21st of November, 1839, at 8 o'clock in the evening—no person appearing or attending to cross-examine the witness. Thomas Lloyd, Justice of the Peace.

Defendant objected to this deposition for the following reasons:

1. That plaintiffs are not entitled to recover.

2. The deposition is not admissible under the rule of court, and sworn to after made.

Objections overruled and defendant excepted.

The court were requested to charge the jury on the following points:

1. The plaintiff's declaration contains no sufficient consideration in law to support the promise and undertaking laid, and therefore the plaintiff cannot recover in this suit.

2. The arrest and discharge of defendant on the execution as set out in plaintiff's declaration, was a full satisfaction and discharge of the debt, then existing and now claimed in this suit.

3. The arrest and discharge of defendant as stated, amounted to payment and discharge of the debt, and any subsequent promise to pay said debt was *nudum pactum* and void.

4. The arrest and discharge of defendant, as set out in plaintiff's narration, was an extinguishment of the debt, and there was no legal or moral obligation binding upon defendant in relation to said debt, which would support a promise to pay it.

5. Under the facts and law of this case, the plaintiff is not entitled to recover.

The court thus charged the jury:

"It appears by the evidence that the plaintiff had a judgment against defendant under a *capias ad satisfaciendum* issued, on which the defendant was arrested by the sheriff of this county, &c. When so arrested, he proposed to arrange the matter by giving his check for part, 150 dollars, of the debt, &c., promising to pay the balance, in consideration of which the attorney discharged him from the arrest. That his check was presented to the bank the next day, but there were no funds there to meet it, &c.; that the defendant has repeatedly since promised to pay the amount of the judgment. If you find the facts to be as stated, the plaintiff is entitled to your verdict. The circumstances of the original indebtedness would be a sufficient consideration for the promise to pay,

[Snevily v. Reed.]

which, if made, you should, in honesty, compel the defendant to comply with, by rendering a verdict for the amount claimed. The plaintiff's remedy under his former judgment is gone, in consequence of the defendant's arrest and discharge, and if the plaintiff could not recover here, he would lose an honest debt due to him, in consequence of having trusted to the defendant's promises, which he has not performed.

" In answer to the point propounded on behalf of the defendant, we say:

" 1. That the plaintiff's declaration does contain a sufficient consideration in law to support the promise and undertaking laid, and if proved, the plaintiff can recover in this suit.

" 2. That the arrest and discharge was a discharge of the judgment and execution, which could not thereafter be further proceeded on, but did not so satisfy the claim of the plaintiff on defendant, but that the latter might bind himself by promise to pay it.

" 3. That the arrest and discharge did discharge the debt so far as the judgment and execution were concerned, but that a subsequent promise to pay it was not *nudum pactum* and void.

" 4. That the arrest and discharge was an extinguishment of the debt so far as regarded any further proceedings upon the judgment, and that although there was no legal obligation binding on defendant, yet there was a moral obligation which would support a promise to pay the debt to the plaintiff, if he made one.

" 5. That under the facts and law of the case, if the jury believe the evidence, which appears to be uncontradicted, the court believe the plaintiff entitled to recover, and that not to permit him to do so would not be consistent with the honesty and justice of the case, and a due regard to the law, which was made to bind parties to the honest performance of the contracts into which they enter."

Errors assigned:

1. The court erred in overruling the objections to the deposition of Samuel Shoch.

2. In their answers to defendant's points.

*Brown*, for plaintiff in error, on the last error assigned, cited *Barnes* 205; 2 *Bac. Ab.* 719; 5 *Johns.* 364; 6 *Term Rep.* 526; 8 *Johns.* 339; 4 *Dall.* 217; *Hob.* 59; 2 *Tid. Prac.* 1069; 2 *Mod.* 186; 1 *Term Rep.* 557, 715; 4 *Conn. Rep.* 440; 1 *Barn. & Ald.* 297; 3 *Wils.* 14; 3 *Serg. & Rawle* 464; 2 *Rawle* 272; 7 *Watts* 440; 1 *Leigh's N. P.* 34, *note*; 7 *Conn. Rep.* 57; 3 *Pick.* 207.

*M'Cormick*, for defendant in error, cited, on the same point, 4 *Burr.* 2484; 7 *Term Rep.* 420; 1 *Taunt.* 426; 3 *Bos. & Pul.* 249; 13 *Johns.* 259; *Chitt. Con.* 10; 12 *Serg. & Rawle* 182.

The opinion of the Court was delivered by

SERGEANT, J.—A promise made or security given to the plain-

tiff by a defendant who is in custody under a *capias ad satisfaciendum*, in consideration of his discharging such defendant from custody, is binding; and therefore, if in this case the plaintiff discharged the defendant in consideration of the defendant giving him his check for a portion of the debt, the defendant would be liable in an action to recover the amount of the check. So, if the defendant promised to pay the debt, or a portion of it, in consideration of the discharge. But the position laid down by the court is much broader. It is, that though the arrest and discharge extinguished the debt so far as the judgment and execution were concerned, yet a subsequent promise to pay would not be *nudum pactum*. And again, that there was still a moral obligation which would support a promise. If the plaintiff arrests a defendant on a *capias ad satisfaciendum*, and imprisons him, and then voluntarily discharges him, the law has always considered it as satisfaction of the debt. It is not only an extinguishment of the judgment, but a voluntary release of the means of satisfaction, which, in contemplation of law, are in the hands of the plaintiff; in addition to which, it is a release for a price received, not in money, but in the seizure and imprisonment of the defendant. The common law regards personal liberty as of the highest price. Lord C. J. Hobart cites the aphorism, *corpus humanum non recipit estimationem*. *Hob.* 59. Hence it has been repeatedly held, that the arrest of a debtor on a *capias ad satisfaciendum*, and a subsequent discharge from arrest by the consent of the creditor, extinguishes the judgment. Ransom *v.* Keyes, 9 *Cow.* 128. And these cases, as to the discharge of a defendant on execution, proceed on the ground of its being considered that the plaintiff received satisfaction in law, by having his debtor once in custody on execution. Crary *v.* James, 6 *Johns.* 51; Yates *v.* Renssellaer, 5 *Johns.* 364.

Then what moral obligation is there upon the debtor to pay a debt from which his creditor has voluntarily released him, after receiving what the law deems satisfaction? I am not able to perceive any. It is true that it was held in Willing *v.* Peters, 12 *Serg. & Rawle* 182, that if a debtor has been voluntarily released by his creditor, a moral obligation to pay the debt still exists, sufficient to support a subsequent promise to pay the debt. That case went a great way, considering that writers on moral law lay it down that if a creditor restore the instrument of obligation, or cancel or destroy it with his own free consent, and with the privity of the debtor, it shall be supposed that the debt is forgiven. *Puffendorff*, B. III, c. 6, sect. 16.

The present case, however, goes beyond that: there is a satisfaction received; not only in the imprisonment of the person of the defendant, but also in the new security given as a condition or consideration of the release. To that, therefore, we think the plaintiff must look; and that a subsequent promise to pay the judgment, is without consideration, and void in law. The case is not like the

release of a debtor by a bankrupt or insolvent act, or a debt barred by the statute of limitations. These discharges are all by act of law, which does no one an injury. But in the present case, it is by the voluntary act of the party himself, and under circumstances entirely different.

It is true that this kind of satisfaction has in our times less value than it formerly had, because, in the changes of society, the facilities of the debtor to procure his discharge from imprisonment have been much extended, and the creditor is now obliged to look for payment rather to the property of his debtor than to his person. Hence, our new code has changed the law on the subject. For by sect. 31 of the act of 16th of June 1836, relating to executions, if the creditor discharges his debtor from imprisonment on a *capias ad satisfaciendum*, at the request of the debtor, his remedies on the judgment are to remain the same as if such *capias ad satisfaciendum* had not been issued. But the case before us occurred in the year 1832, and must be judged by the law as it then stood.

We therefore think the court erred in its direction to the jury, that a subsequent promise was binding, and that there remained a moral obligation to pay the debt. The plaintiff's cause of action is on the check or other engagement, in consideration of which the defendant was discharged.

I shall now notice particularly the defendant's bill of exceptions and other points.

1. The first bill of exceptions is to the admission of the deposition of Mr Shoch. The objection to this is, that it is in the handwriting of Mr Shoch, and that it was sworn to after it was made. But neither of these appears in the record before us to be the case. We have no means of inquiring, nor the right to inquire, in whose handwriting the deposition is. If it was as stated, it should have been shown to the court below, and should appear on the record. So as to the other objection. The beginning of the deposition states that "Samuel Shoch appeared on the 21st of November, and was *first duly sworn.*" The certificate below is, " sworn and subscribed at my office, on the 21st of November." Something was said about filing; but the paper book gives us no information on this head to enable us to decide it.

2. The second bill is to the admission of the check. From the manner in which the declaration is framed, it is not easy to see the relevancy of this evidence to the declaration, nor its materiality, unless as part of the *res gestæ*, and to make more probable the allegation of a subsequent promise. We think in the latter point of view it might be admissible.

The first, second, third, fourth, and fifth answers of the court have been already adverted to. In the sixth, we think the court were right.

It is proper to remark that the declaration is on its face defective, and had the defendant demurred to it, it could not have been sup-

ported.  But this the defendant did not do, but went to trial on the merits, under the pleas of *non assumpsit* and payment.  Neither has this defect been moved in arrest of judgment, or assigned as error.  The defendant asked the court to charge the jury to that effect, which was not the proper mode to take advantage of it.

Judgment reversed, and a *venire facias de novo* awarded.