T. P. SHEPARD & CO. *v.* JAMES A. RHODES and another.

No action can be maintained on a promise founded upon a *mere* moral consideration; but where the precedent *original* consideration was sufficient to sustain an action, but the right of action has been suspended or barred by some positive rule of statutory or common law, the debtor may, by a subsequent promise, waive the exemption which the law has interposed, indirectly for his benefit, but mainly from reasons of sound policy. A debt released by act of the creditor, does not fall within this latter class of cases, although the release was executed in expectation of a dividend under a voluntary assignment for the benefit of creditors, and no dividend was, or could be, realized out of the assigned assets.

Although courts do not, in general, go into the question of the equality and inequality of the consideration of a contract fairly made between competent parties, yet, where the contract is, in substance, for the exchange of unequal sums of money at the same time, or at different times, if the element of time affords no equivalent for the inequality, there is no consideration, and so, no valid promise, for the excess of the sum promised over that received.

A nominal money consideration, such as one dollar, for a promise to pay upwards of one thousand dollars, is merely technical and colorable, and cannot support such a promise.

ASSUMPSIT to recover the sum of two thousand dollars, due from the defendants to the plaintiffs. The declaration contained the following special count:—

" For that the said defendants, in consideration that they were indebted to the said plaintiffs in the sum of about one thousand dollars, for money and stock by the plaintiffs advanced for the defendants' business, and the said plaintiffs having discharged the defendants from said debt looking to the dividend under their assignment as the only consideration of said discharge, then and therefor, on, to wit, the first day of September, 1856, induced by the nature of said indebtedness, considering themselves bound in honor to make the same good, and in further consideration of the sum of one dollar to them then paid, did then make this new promise and agreement, that after the final dividend should have been ascertained under said assignment, they jointly and severally agreed to pay to the said plaintiffs, one year after that date, the balance, if any, which might then exist between the said dividend and the full debt, principal and interest, which they (the said plaintiffs) had discharged. And the said plaintiffs aver, that no dividend under said assignment has ever been ascertained or declared, and that on, to wit, the            day of           A. D. 185-, they were notified by the assignees of said defendants, that no dividend would be paid under the same; whereby, and in consideration whereof, and the premises, the said defendants jointly and severally became liable to pay to said plaintiffs the full debt, principal and interest, due from the defendants to the plaintiffs."

To this count the defendants demurred, generally.

*Parsons, for the plaintiffs.*

*Currey, for the defendants.*

BULLOCK, J. The count demurred to states, in substance, that the plaintiffs had discharged the defendants from a certain debt, then due and owing from them to the plaintiffs, in consideration of dividends to be received from the proceeds of certain effects assigned by the defendants; and that, subsequent to such discharge, the defendants feeling themselves honorably bound to pay to the plaintiffs this debt, in consideration thereof and of one dollar to them paid, made the following *new* promise, to wit, to pay to the plaintiffs in *one* year after a final dividend, any difference that might then exist between their full debt and interest and the amount of any dividend or dividends the plaintiffs might

have previously received. The count further states, that more than one year has elapsed since the plaintiffs received notice that *no* dividend would be paid them from the assigned effects.

This statement of the cause of action shows, in effect, two separate and distinct considerations, as the foundation of the *new* promise : *first*, a *moral* consideration, that the defendants, notwithstanding their discharge, felt themselves in honor bound to pay the plaintiffs' debt ; and, *second*, the *valuable* consideration of one dollar, paid to the defendants by the plaintiffs when the new promise was made.

Are these considerations, as stated, sufficient in law to sustain the promise ? Passing by the earlier cases, referred to at length in a note to the report of *Wennall* v. *Adney*, 3 Bos. & Pul. 249, and some of which hold to the opposite, it may now be deemed settled, that no action can be maintained upon a promise founded upon a mere moral consideration. *Mills* v. *Wyman*, 3 Pick. 207 ; *Eastwood* v. *Kenyon*, 11 Ad. & Ell. 438 ; *Beaumont* v. *Reeve*, 8 Ad. & Ell. (N. S.) 483 ; S. C. 55 Eng. C. L. 483. It has been said, that such a doctrine is not creditable to the common law ; but the rule has its origin in the widely diversified character of moral duties, and the consequent difficulty of measuring them with exactness, and determining which are so high and obligatory in their nature as to demand, in their performance, the payment of money.

There is a class of cases which, for the most part, have been regarded as not falling within the rule, that a mere moral consideration will not support a promise. Of such is the case of a promise barred by the statute of limitations, where the party is under no legal liability to pay when the promise is made. And so, of the promise of an infant, made after he becomes of age, to pay a debt incurred during his minority, and which debt he is then at liberty to ratify or avoid. Upon the same principle, a promise to pay a debt originally usurious, where usury avoids the contract, but freed from all usury at the time the new promise is made, is binding, because the original contract is not *void*, but voidable only at the election of the borrower. And so, the promise of a bankrupt, made after certificate of discharge *granted*, may be enforced, although now, in England, by statute (6 Geo.

IV. c. 16) the promise must be in *writing*. But it·is settled, that such considerations·as love, friendship, natural affection, even the close relation existing between parent and child, are not, of themselves, sufficient to support an express promise. Whether the promise of a *feme covert*, after coverture ended, to pay a debt contracted during coverture, falls within the limit of the exception, has been a subject of frequent discussion, and of decisions somewhat contrariant. In *Lee* v. *Muggeridge*, 5 Taunt. 36, an action was upheld against her executors, upon the bond of a *feme covert*, followed by her promise to pay, *dum sola*. But this case can·hardly be deemed authority since the decision in *Eastwood* v. *Kenyon*, *supra;* and, in New York, an action was maintained against a woman, upon a contract of retainer entered into by her before a divorce. *Wilson* v. *Burr*, 25 Wend. 386. A more leading case, in the same State, affirming the validity of such a promise, is that of *Goulding* v. *Davidson*, 3 Am. Law Reg. No. 1. N. S. 34, recently decided in the Court of Appeals. The facts were, that a *feme covert* represented herself as unmarried and as trading on her own account, and so procured credit, and purchased goods, for which she gave her note. Her coverture was not known to the creditor. After the death of her husband, she promised to pay this debt, and an action was brought upon this promise. The decision proceeds, mainly, upon the ground, that being guilty of fraud in the original undertaking, *trover* or *replevin* might have been brought against her and her husband at any time after the supposed purchase was made, and since this cause of action existed against her during coverture, a promise by her, after coverture, rested upon this as a sufficient consideration.

The principle recognized in, and which, almost without exception, has controlled this class of cases, is this : that when the *precedent original* consideration was sufficient to sustain the promise, but the *right of action* was suspended or barred by some positive rule of statutory or common law, the debtor might, by a subsequent promise, waive the exemption which the law has interposed indirectly for his benefit, but, mainly, from reasons of sound policy.

The case here is one where the original right of action was

extinguished, not by the *act* of the *law*, but by the *act* of the *parties*. It was a *voluntary* release of the debt by the creditor to the debtor. In *Willing* v. *Peters*, 12 S. & R. 179, the question arose, how far a promise to pay a debt, thus discharged, might be enforced ; and, because of the analogy between waiving a discharge created by act of law and one created by act of the parties, the court upheld the action. Shaw, C. J., in *Valentine* v. *Foster*, 1 Metc. 522, admits the closeness of the analogy, and suggests, if the rule be not narrow that allows the waiver in the one case to bind the party, and rejects it in the other ; but he adds, that the Pennsylvania authority is the only one he has been able to find in support of the doctrine ; and in the case then before him, ruled, that when a creditor released a debtor to make him a witness, the subsequent promise of the debtor was not binding. Considering his own decision, and that the case of *Willing* v. *Peters* was subsequently overruled in the same court, in *Snevily* v. *Read*, 9 Watts, 396, while in other courts it has been repeatedly adjudicated, that after the *voluntary* release of a debt, an express promise does not revive it, nor does it form a sufficient consideration to support the *new* promise, we may affirm that such, at present, is the settled law. *Warren* v. *Whitney*, 24 Maine, 561 ; *Stafford* v. *Bacon*, 1 Hill, 533.

But the plaintiffs aver an additional consideration for the defendants' promise, and this raises another question : because the former consideration not being illegal, but only insufficient, the latter may sustain the promise declared upon. This additional consideration is *one* dollar, for which, it is alleged, the defendants promised, &c., to pay a sum greater than $1000.

Ordinarily, courts do not go into the question of *equality* or *inequality* of considerations ; but act upon the presumption that parties capable to contract are capable, as well, of regulating the terms of their contracts, granting relief only when the inequality is shown to have arisen from *mistake*, *misrepresentation*, or fraud. A different rule would, in every case, impose upon the court the necessity of enquiring into, and of determining the value of the property received by the party giving the promise. Such a course is obviously impracticable. In all cases, therefore, where the *assumption* or undertaking is founded upon the sale or ex-

Shepard & Co. v. Rhodes and another.

change of merchandise or property, or upon *other than a money* consideration, and the promise has been deliberately made, the law looks no further than to see that the obligation rests upon *a* consideration, that is, one recognized as legal, and of *some* value. But the reason of the rule ceases, and, hence, the rule ceases, when applied to contracts to pay money and founded solely upon a *money* consideration. How far a forbearance to sue, or the giving of time, or the mere waiver of some right, may support a promise, we do not consider, since the question does not arise. Nor, for the like reason, do we consider how far the rule is qualified or limited by special statutes regulating *interest;* or in that class of contracts peculiar to the *law merchant,* as *bottomry, respondentia,* and the course of *exchange.* Aside from these and some other exceptions, at common law a contract for the exchange of *unequal* sums of money at the same time, or at different times, when the element of time is no equivalent, is not binding; and, in such cases, courts may and do enquire into the *equality* of the contract; for its subject matter, upon both sides, has not only a fixed value, but is itself the standard of all values; and so, for the difference of value, there is no consideration. In this principle, the earliest prohibitions,—earlier even than the time of Alfred,—and the later legislative enactments against usury, both in England and in this country, have their origin. The rule is deemed to be founded in good policy.

In the case before us, the only *legal* consideration the defendants received was *one* dollar, for which they engaged to pay a much larger sum. The case, therefore, falls within the principle adverted to. The consideration was not only *unequal,* but *grossly* so. It was a mere *nominal* consideration; if even received by the defendants, it was, no doubt, regarded as such by them, and intended as such by the promisees. It was, at best, purely *technical* and *colorable,* and obviously is wanting in that degree of equitable equality sufficient to support the promise declared upon.

The demurrer to the *first* count is therefore sustained.