Evans, Fite, Porter & Co. *v.* Bell.

EVANS, FITE, PORTER & CO. *v.* VIRGINIA BELL,

Executrix.

1. PLEADINGS AND PRACTICE. *Compromise of debts.* If a creditor, under a compromise arrangement with other creditors and the debtor, accept part of his demand in full of the whole, the claim to the remainder is extinguished, and such unpaid part will neither sustain a suit nor form a sufficient consideration for a new promise by note.

2. SAME. *Same.* Such a note cannot be sustained upon the ground that it was given to avoid litigation, when the proof shows that the party to whom it was given had taken no step to commence litigation, nor made any threat to that effect, although another creditor had prepared a bill by himself alone, against the debtor alone, apparently with the intention of filing it.

3. SAME. *Same. Fraud.* No one or more creditors to a composition arrangement by all the creditors with a common debtor can, upon the pretense or ground of fraud on the part of the debtor in the settlement, secure a benefit to himself, at any rate without proof of fraud sufficient to set aside the composition as to all the creditors, and then only, perhaps, by setting aside the composition releases by proper proceedings.

---

FROM ROBERTSON.

---

Appeal in error from the Circuit Court of Robertson county. Jo. C. STARK, J.

H. E. JONES for complainants.

JNO. E. & E. A. GARNER and J. W. JUDD for defendant.

COOPER, J., delivered the opinion of the court.

J. L. Bell, the testator of the defendant, Virginia Bell, being a merchant at Springfield, became indebted

to the plaintiffs, and other wholesale merchants at Nash-
ville, Louisville and Cincinnati to the amount of nearly
thirteen thousand dollars. Being so indebted he con-
veyed to his brother-in-law his store-house and stock
of goods, together with his books and accounts, on
March 14, 1877, in trust to secure his creditors rata-
ably. On the 16th of the same month, he conveyed
to the same trustee, for like purpose, his dwelling
house and lot. Upon examination by one of the mem-
bers of the plaintiffs' firm, and by other creditors, of
the property thus conveyed in trust, the creditors pro-
posed to take fifty cents in the dollar in full of their
claims, the plaintiffs proposing to procure the neces-
sary releases from all the creditors upon payment of
the money. The trustee raised and paid to the plain-
tiffs the required amount, and releases in full were
obtained by complainants from all of the creditors.
The trustee procured $1,000 from the sale of the
trust assets, advanced himself $250, and obtained the
residue, $5,000, from Bell. The money was paid and
the releases obtained in a month or two after the
execution of the deeds of trust. On January 24, 1878,
Bell gave to the plaintiffs his note, being the note
sued on, at twelve months, for the one-half of the un-
paid part of the released debt. Bell died May, 19,
1879, leaving a will by which the defendant was ap-
pointed his executrix. This suit was brought against
her as executrix on the note thus given. The defense
relied upon was the want of consideration.

The case was tried by the circuit judge without
a jury. The plaintiffs contended that the unpaid part

of the released debt was a sufficient consideration for the new note, and further that the note was given to prevent threatened litigation to set aside the composition on the ground of fraud. The circuit judge found generally both the law and the facts in favor of the defendant. He found specially that there was no fraud committed by the defendant's testator in procuring the settlement with his creditors of their debts. at fifty cents on the dollar; that there was no threatened litigation upon the part of the plaintiffs against defendant's testator at the time of the execution of the note sued on, and that said note was not executed to avoid litigation; that the note was executed for one-half of the balance of the original debt after the payment to plaintiffs of fifty cents on the dollar of the whole, which debt was released in consideration of such payment; and, finally, that as matter of law, the released debt was not a sufficient consideration to sustain the note.

Upon the appeal in error of the plaintiffs, the Referees report in favor of the finding of the circuit judge upon the law, but recommend a reversal on the facts. The defendant has excepted to the conclusions. of fact found by the Referees.

The chancellor and the Referees are right in holding that a debt released upon an accord and satisfaction by a composition assented to by all the creditors is extinguished, and can neither sustain a suit nor form the consideration of a new promise. If a creditor, says Mr. Chitty, under a composition arrangement with other creditors and the debtor, accept part,

of the demand in full for the whole demand, the claim to the remainder is in law extinguished, although there be not any release by deed, because it would be a fraud upon other creditors to seek to enforce the payment of the balance. Chit. on Con., 687, 776. And our statutes work the same result by providing that releases shall have effect according to the intention of parties thereto, and that all settlements in writing for the composition of debts shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given: New Code, secs. 4538, 4539. Of course, if a debt is once extinguished by the voluntary act of the party, it cannot be revived without a new consideration. It is otherwise where the remedy is lost, as by the bar of the statute of limitations, or a discharge in bankruptcy, leaving the debt itself unaffected. A moral obligation alone is not a sufficient consideration to sustain a promise: *Bates* v. *Watson*, 1 Sneed, 376. It has accordingly been held, both in England and America, that a note given for part of a debt voluntarily released upon a composition, is, without more, *nudum pactum*, and will not sustain an action: *Ex parte Hall*, 1 Deacon, 171; *Stafford* v. *Bacon*, 1 Hill, 532; *Warren* v. *Whitney*, 24 Me., 561; *Montgomery* v. *Lampton*, 3 Met. (Ky.), 519. And the law is so laid down in 1 Pars. Con., 381, note. Mr. Daniel, in his able work on Negotiable Instruments, says, in sec. 182, "that a note executed for the payment of a debt discharged in bankruptcy, or barred by the statute of limitations, or voluntarily released, would be

good." Precisely what he means by "voluntarily re-
leased," is not explained. He cites in support of that
part of the section, *Stafford* v. *Bacon*, 25 Wend.,
384; *Valentine* v. *Foster*, 1 Metc., 120; *Sneveley* v.
*Read*, 9 Watts, 396. The first of these cases, as we
learn from the same case, 2 Hill, 353, was only
the opinion of the chief justice of the court, errone-
ously printed by the reporter as the opinion of the
court, when the opinion of the court, which was
finally concurred in by the chief justice himself, was
exactly to the contrary, as reported in 1 Hill, 532.
In the second case cited by Mr. Daniel, the Supreme
Judicial Court of Massachusetts refused to sustain an
action, based on a new promise to pay a debt re-
leased to qualify the debtor to become a witness. In
the third case, the Supreme Court of Pennsylvania
held that a debt in judgment was extinguished by
arresting the debtor by a *ca. sa.*, and would not sus-
tain a new promise; and this case virtually over-
rules the earlier case of *Willing* v. *Peters*, 12 Ser.
& R., 177, which seems to be the only case tending
to support the contention of the plaintiffs.

The trustee proves in this case that $5,000 of the
money used by him in compromising the debts were
paid to him by Bell, and there is no proof where
Bell obtained the money. Manier, of the firm of
Pigue, Manier & Co., one of the Nashville firms who
joined in the composition, proves that his firm ob-
tained information (not stated) that Bell had prac-
ticed a fraud in obtaining a release, and caused a bill
to be prepared in their name alone, against Bell alone,

to set aside the release, and be restored to their rights as if no such release had been executed; that he and Porter, one of the plaintiffs, went to Springfield to file the bill or effect a settlement; that Porter alone saw and conversed with Bell, witness not being present, the result being that Bell handed him a note for one-half of the unpaid balance of debt due his firm, and handed to Porter the note now in suit. The defendant, being examined as a witness, deposes that in July, 1878, after Bell's death, she saw Porter, and had a conversation with him about the note in question, in which she stated to him that she knew what the note was given for, and remarked: "Mr. Porter, I had an impression that you were all going to sue Mr. Bell;" and he replied: "No, we did not intend to sue him." Porter himself says, in his answer to the defendant's petition for discovery, that Pigue, Manier & Co. caused a bill to be prepared, and Manier and witness went to Springfield for the purpose of filing it, or having a settlement; that Bell, when these facts were communicated to him, "agreed, in consideration that Pigue, Manier & Co. would not carry the matter into court, to give them his note for one-half of the balance due them, which he did; and, at the same time, gave me the note in question, saying that he would not treat me any worse than he did Pigue, Manier & Co." There is no evidence that plaintiffs ever threatened to sue, or that the note in suit was given in consideration of their promise not to sue. The bill prepared was for the exclusive benefit, and in the sole name of Pigue, Manier & Co.,

.and, it is very clear, that no one else could receive .any benefit under it, and that it did not bring before the court the necessary parties to set aside a ·composition release by a number of creditors. It was manifestly prepared *in terrorem* to secure to two of a large number of creditors an advantage over the others.

Under these circumstances, we cannot say that there is no evidence to sustain the finding of the circuit judge that there was no threatened litigation upon the part of the plaintiffs against defendant's testator at the time of the execution of the note sued on, and that said note was not executed to avoid litigation by them. On the contrary, the evidence is clearly in favor of the findings.

The circuit judge further found that there was no fraud committed by the defendant's testator in procuring the settlement with his creditors. The Referees are of opinion, on the other hand, that the proof is ample to show such fraud. They lay stress, in this connection, on the fact, as they say, that the settlement was made on Bell's representations that he was insolvent, and unable to pay more than fifty cents of his indebtedness. For this they refer to Porter's answer to the petition for discovery already referred to. But that part of the answer was not read by the defendant below, and not being responsive to the interrogatory put could not be read by the plaintiffs. Our statute is that the answer of a party to the petition and interrogatories filed under it is evidence, on the trial of the suit, in the same manner, and

with the like effect, as an answer to a bill in equity for discovery: New Code, sec. 4,656. And the rule of. equity is that an answer not responsive is not evidence for the defendant: *Davis* v. *Clayton,* 5 *Hum.,* 446; *Alexander* v. *Wallace,* 10 Yer., 105; *Beach* v. *Haynes,* 1 Tenn. Ch., 569. The interrogatory put to the plaintiffs in the petition for discovery was merely whether the note sued on was not executed for one-half of the balance of the debt due plaintiffs, which was left after the payment of the fifty per. centum. The answer is that it was, and adds: "But the immediate consideration which led to the note was as follows," etc., and then gives a statement which contains the words cited by the Referees. The circuit judge allowed the greater part of the answer to be read, saying that he would consider the evidence for the purpose of seeing if it tended to prove any threatened litigation of Bell by the plaintiffs, as an inducement to the execution of the note. Now, if it be conceded that so much of the answer as related to the consideration of the note as claimed by the plaintiffs was admissible, of which there may be grave doubts, yet surely conversations with Bell in relation to the composition formed no part of the consideration of the note, and were not in any sense responsive to the interrogatory. There is no other proof on the subject in the record. The Referees lay stress also on the fact that Bell paid $5,000 of the composition money. But, of course, the creditors expected him to pay all the money in some way, and they made no complaint of the source at the time,.

and it does not now appear when or how it was procured. And if, as the trustee proves, the proposition of compromise came from the creditors, without any assertion by Bell as to his pecuniary condition, the mere fact that the money was the money of Bell would not establish fraud. If there had been proof of actual fraud by Bell in obtaining the composition, then the execution of the notes of January 24, 1878, might be looked to as in confession of the fraud, but in the absence of such proof, it would only be evidence of buying his peace. The Referees lay no stress on the fact, and the circuit judge found that there was no fraud.

But the difficulty of the plaintiffs is, that their suit is upon a note based upon an extinguished debt, and without any new consideration, so far as they are concerned. They were the active creditors in arranging the composition, and getting the releases of other creditors. They made common cause with all the creditors who joined in the arrangement, and could not at the time have bargained for any advantage to themselves over the other creditors. Any such agreement, says Mr. Pomeroy, if executory, could not be enforced against the debtor, either in equity or at law, for it would be a fraud on the other creditors: 2 Pom. Eq., sec. 967. They cannot maintain a suit on the unpaid part of the debt, for that too, in the language of Mr. Chitty, quoted above, would be a fraud on the associate creditors. And it is difficult to see how any one creditor, who is a party to the composition, can secure a separate benefit to himself upon the ground of fraud, or alleged fraud, in the compo-

37—VOL. 15.

sition. At any rate, a creditor cannot go back to the original consideration without showing a state of facts which would avoid all the releases, nor then, perhaps, except by filing a bill for the purpose.

The exceptions to the report of the Referees will be sustained, and the judgment of the circuit court affirmed.